BREITENBACH VS. TURNER, Adm'r &c., impleaded with others.

The act of congress approved February 25, 1862, which authorizes the issue of United States treasury notes and declares that they shall be "a legal tender in payment of all debts, public and private," is a valid enactment.

The power to "emit bills of credit" is properly incident to the other powers conferred upon the federal government, and its exercise by that government is not prohibited by the constitution.

The power to emit such bills carries with it, as an incident, the power to declare their effect.

In an equitable action, where a party relies upon a tender of money, it is sufficient, to keep such tender good, that he offers to bring the money into court, and is ready to comply with the directions of the court in regard to it.

APPEAL from the Circuit Court for *Ozaukee* County.

Foreclosure of a mortgage. *Adolph Croll*, in 1858, made his note for $200 to one Caroline Hartwig, and executed the mortgage in suit to secure the same. The note and mortgage were afterwards sold and transferred to the plaintiff; and the mortgaged premises were sold by the mortgagor to *Martha Fink.* Afterwards, to wit, on the 1st of October, 1862, this action was commenced against the mortgagor and wife and another person, but *Martha Fink* was not then made a party. On the 24th of the same month said *Martha* tendered to the plaintiff $126 in "so called legal tender notes of the United States," that sum being the amount then due and unpaid upon the note. The plaintiff refused to receive the money so tendered because it did not include the costs of the action and was not in coin. In February, 1863, *Martha Fink* was made a defendant in the action, and answered alleging her ownership of the premises at the commencement of the action, and the tender aforesaid. The answer also alleged that said defendant was still ready to pay said sum, and offered to bring the same into court. The money was not, however, actually brought into court. The circuit court held that the tender should have been made in coin, and rendered a judgment of foreclosure and sale; from which the defendant *Turner*, as administrator of the estate of said *Martha*, deceased, took this appeal.

Breitenbach vs. Turner, Adm'r &c., impleaded with others.

*Eugene S. Turner*, in person.

*J. Stark*, for respondent, contended that the plea of tender was insufficient, because the treasury notes of the United States could not be made by act of congress a legal tender, at least for debts contracted previous to the passage of the law; and because the tender was not kept good by bringing the money into court. To the last point he cited 5 Clarke (Iowa), 460, 481; 1 Head (Tenn.), 19; 5 Harrington (Del.), 17; 24 Geo., 211; 16 Texas, 461; 11 Ind., 532; 25 Pa. St., 354; 2 Denio, 196; 23 Barb., 490; 7 B. Mon., 279; 2 Gilman, 679; 7 Paige, 344; 26 Wend., 541; Sen. JOHNSON in *Post v. Arnot*, 2 Denio, 344; WELLES, J., in *Kortright v. Cady*, 21 N. Y., 343.

*By the Court*, PAINE, J. This case involves the question of the validity of the law of Congress making the treasury notes of the United States a legal tender. We have arrived at the conclusion that the law is valid. And the reasons for that conclusion are so fully set forth in the opinions of the New York Supreme Court in the case of *Hague v. Powers*, 30 Barb., 427, and in the opinions of the Court of Appeals in that state, in the cases of *The Metropolitan Bank* and *The Shoe and Leather Bank v. Van Dyck*, and *Meyer v. Roosevelt*, which have been printed in pamphlet, that it would be mere repetition to state them here.

I will say, however, that my conviction of the correctness of the decision in those cases has been greatly strengthened by a careful examination of the dissenting opinion of Chief Justice DENIO. For after admitting what that learned judge admits, it seems to me impossible to deny what he denies. He admits that the government has power to issue these notes, and to have them circulate as currency. I attach so much importance to his argument on this point, that I shall quote from it at some length. He says: " The right to issue the obligations of the government for money borrowed or for property or services furnished for national purposes, is not and cannot

be questioned. The form and denomination of such securities are matters which belong to the discretion of the government making them ; and if an issue could be raised upon the intent to have them circulate as the representatives of money, I should still think that it would be legally unobjectionable to so accommodate them to the business wants of the community, as to make it the interest of successive holders to continue them in circulation, and thus benefit the treasury by deferring the time of their presentment for payment. It has been urged that such issues of paper would be an emission of bills of credit, as understood at the time the constitution was framed, and that the making of them was expressly forbidden to the states and not committed to congress. In support of this view it is shown that an express authority to issue such paper was at one time inserted in the draft of the constitution, in connection with the power to borrow money, but was stricken out on the motion of a deputy from New York. Upon an examination of the extract from the debates which was referred to in the argument, I am of opinion that it cannot be affirmed that this change was made from an intention positively to prohibit the issue of such obligations, but that it was done from the apprehension that if the power to make them was expressly conferred, the legislature might, under the idea of declaring their effect, have engrafted upon them the quality of a legal tender. If the authority was left as an incident to the power to borrow money, purchase property or pay debts, no such consequence, it was thought, would follow. If it had been designed to prohibit their issue under any circumstances by the government of the Union as well as by the states, it is presumed that a similar prohibition would have been applied in terms. If the effect of this debate was different from what I conclude it to be, I should still hesitate to allow it any considerable weight in construing the constitution. The only safe way, in my opinion, to deal with that instrument, is to look at its language in connection with its contemporaneous history and the

known circumstances of the times, and to attach such meaning to it as we conceive the people who adopted it would have given. I shall assume, therefore, that there does not exist any constitutional objection to the currency which was issued under the act of Congress which we are considering; and that the only question which we can entertain, arises upon the mandate that the notes shall be a legal tender in the payment of private debts."

It thus appears that the learned judge sustains the power of the government to issue these notes, notwithstanding a provision expressly conferring the power was stricken out by a vote of the convention. And this conclusion seems to me entirely correct. For the very fact that those who framed the constitution expressly prohibited the states from issuing bills of credit, and from making anything except gold and silver a legal tender, shows, beyond any question, that it was their opinion that governments possessing such enlarged sovereign powers as the states possessed might do both those things, unless prohibited, as other governments and as the states themselves had done before. And this being their understanding in respect to the states, it must have been the same in respect to the general government. For although that government is one of limited powers, yet those powers are among the most important belonging to sovereignty, involving questions of national existence and prosperity, pre-eminently calculated to test the strength and resources of the government and furnish occasion for the use of its credit, and consequently a necessity for the issuing of bills of credit. Whatever difference there may be, then, between the powers of the states and the federal government, there is certainly nothing in that difference unfavorable to the latter in respect to the power to issue bills of credit, in the absence of any prohibition. On the contrary, its general powers are peculiarly of a nature to imply the existence of this power, and so the framers of the constitution must have well understood. The conclusion is therefore irresistible, that—

as said by Judge DENIO—"if it had been designed to prohibit their issue under any circumstances by the government of the Union as well as by the states, it is presumed that a similar prohibition would have been applied in terms."

But this being true in respect to the power to issue bills of credit, the argument seems to me to apply with equal force to the other power, of making something besides gold and silver a legal tender. For although the quality of being a legal tender may not be essential to a bill of credit, yet it was a quality which had often been given to them, and to secure which generally constituted a leading object in issuing that class of securities. The two subjects were considered together by those who framed the constitution. They prohibited the states from emitting bills of credit, and followed that by a prohibition to make anything but gold and silver a legal tender. They did not prohibit the federal government from emitting those bills ; hence Judge DENIO concludes that they intended to leave it that power. And, by the same reasoning, as they did not prohibit it from making something besides gold and silver a legal tender, it is fair to conclude that they intended it might exercise that power, provided it could be claimed as incidental to any of the general powers conferred on that government. Indeed the absence of an express prohibition is more significant in respect to this power than to the other. Because as bills of credit were the things to which governments had usually attempted to attach the quality of a legal tender, and as they furnish the most natural and available objects for that purpose, if the constitution had designed to prohibit such a result under any circumstances, the prohibition would have been naturally directed against that government which, as Judge DENIO concedes, retained the power to issue that class of securities, rather than against the state governments, which had previously been prohibited from issuing them at all. No such prohibition having been made, the inference seems unavoidable, that in leaving the general government the power to emit bills of

credit, the constitution designed to allow the exercise of that power with its usual incidents, one of which was the power, in declaring their effect, to make them a legal tender.

The whole question seems, therefore, to resolve itself into the one, whether the latter power can fairly be regarded as an incident of the former. And it seems to me clear that it can be. Judge DENIO himself shows that it was the opinion of the framers of the constitution that if they expressly conferred on the government power to emit bills of credit, it could, in declaring their effect, make them a legal tender. True, he claims that they refused to insert the power, not because they intended that the government should not have it, but because they supposed that if the power to issue the bills was not expressly conferred, but was left to be derived as itself incidental to some other power, then they could not be made a legal tender. Whether he is right in assuming that the convention acted upon this idea, I am not prepared to determine. But if such was their idea, it seems evidently a mistaken one. Because if an express power to emit bills of credit carries with it the power, in declaring their effect, to make them a legal tender, it seems obvious that if the power exists at all, it exists with the same incidents, although itself derived as incidental to some other express power. If, when the power is expressly conferred, the government may declare their effect, it is because the latter is a natural, legitimate incident of the power. But it is just as natural and legitimate an incident, where the power to emit is itself implied, as it would be where that power was expressed. It is the same power whether expressed or implied, and must have the same incidents.

The convention was evidently right in supposing that the power of declaring the effect of bills of credit, was a natural incident of the power to emit them. For bills of credit are designed as a circulating medium. In *Craig v. Missouri*, 4 Pet., 432, Chief Justice MARSHALL says: "To emit bills of credit conveys to the mind the idea of issuing paper *intended to cir-*

*circulate through the community for its ordinary purposes as money,* which paper is redeemable at a future day." And again on the same page: "Bills of credit signify a paper medium intended to circulate between individuals, and between government and individuals, for the ordinary purposes of society." Now it is apparent that any government which has the power to issue such a circulating medium as this, must of necessity have the power to declare its effect. The principal function of a circulating medium being its use for the payment of debts, the government which has the power to issue and establish it, must have the power to declare that it may be used with effect in the accomplishment of its chief object. Putting together, therefore, the correct conclusion of the convention, that the power to emit bills of credit carries with it the power to make them a legal tender, and the correct admission of Judge DENIO, that the general government has the power to emit bills of credit, the necessary result is to sustain the provision of the act of congress under consideration.

I rest my conclusion upon the position that the power to declare them a legal tender is a natural, legitimate incident of the power to emit bills of credit, in denying which I think Judge DENIO is mistaken. I did not propose to examine his opinion at length, but simply to point out what seemed to me the inconsistency of admitting the power to emit, and then denying the power to declare the effect with which the bills might circulate after they were issued.

But it is claimed that although the tender was valid originally, yet it was not kept good, for the reason that the money was not paid into court. And a large class of authorities are relied on, which hold that to support the legal plea of tender, the money must be paid in. However that may be, we are of the opinion that in equity it is sufficient for the party relying on a tender to offer to bring the money into court, and to be ready to comply with the direction of the court in regard to it. That was done here; and if the treasury notes were

not actually paid in, it was undoubtedly because the court decided that they were not a valid tender at all. In *Bailey v. Metcalf*, 6 N. H., 156, which was a case at law, the court, while holding that the money must be paid in, said that the party might remove the difficulty, if that had been the only one, by then bringing it in. In *Mason et al. v. Croom*, 24 Georgia, 211, it was held sufficient to aver a readiness to bring the tendered articles into court; and this undoubtedly upon the assumption that in a court of equity the whole matter would then be subject to its control, and it could by its judgment protect the rights of all the parties.

But in the case of *Kortright v. Cady*, 21 N. Y., 343, it was held that a tender of a mortgage debt discharged the lien, whether the tender was kept good or not. We have followed that case in holding that a valid tender would discharge the lien, though in the case in which we so held, there was no question about a tender after the law day, or about keeping the tender good. *Moore v. Cord*, 14 Wis., 213–218. We do not, however, deem it necessary to rely upon that case here, as we hold it sufficient in equity for the party to offer to bring the tender into court, and to be ready to do so as the court may direct.

The judgment is reversed, and the cause remanded with directions to enter judgment for the appellant upon the facts found.