## WARNER vs. SAUK COUNTY BANK.

*Deposit of gold coin—Payment in treasury notes.*

1. One who deposits gold coin to be returned in like coin, can have judgment in an action at law against the depositary, for only the same number of dollars, although the judgment may be discharged in treasury notes.
2. How equity would deal with a conversion by a trustee of trust funds in gold coin, *quære*.

APPEAL from the Circuit Court for *Sauk* County.

Action to recover possession of a package of gold coin of the United States, "representing at its par value $400, of the value of $850," which it was alleged, the defendant wrongfully detained from the plaintiff. The complaint demanded judg-

ment for a return of the gold, and damages for its detention. The plaintiff's evidence tended to show that $400 in gold coin was deposited with the defendant in June, 1863, by one English, as security for a loan of $500 in currency; that the president of the bank was asked at the time to give a "special certificate of deposit," but replied that it would make no difference if he stated on the bank book that the deposit was in gold; that he made such statement in the depositor's bank book; that in August, 1863, the debt for which the gold was deposited as security, was paid; that in February, 1865, English made a sale of the gold to the plaintiff, *Warner*, for $800; that a few days afterwards *Warner* presented to the bank evidence of such sale, and demanded the gold, which was refused. The plaintiff offered to show that he bought the gold for immediate sale; that at the time of the demand gold was worth a premium of $2.12; and that at the time of the trial it was worth a premium of only 40 per cent.; but the evidence was excluded.

The evidence on the part of the defendant need not be stated. The court charged the jury that their verdict, if for the plaintiff, should be for the *par* value of the gold, and not its market value; and that interest from the time of demand was the measure of damages for the detention. Verdict for the plaintiff, assessing the value of the gold at $400, and damages for its detention at $15.68. Judgment for a return of the gold, or in default thereof for $415.68, and costs; from which the plaintiff appealed.

*J. C. Mackay*, for appellant:

If one hundred dollars in gold is loaned, and a note taken for that amount, it may be discharged in legal tender notes. There being no agreement to pay a premium, the court can make none for the parties. But if the borrower of the gold had agreed to return gold or its market value in greenbacks, the lender would be entitled to recover accordingly. If A borrow of B. a given sum in gold, rating it at its then market value in greenbacks, and gives his note for that value, with in-

terest, would not the note be valid? Yet such a contract could not be sustained except upon the theory that gold has a market value above that of greenbacks. If a man has a package of $400 in gold, for which he has just paid $800 in greenbacks, and another person wrongfully converts it to his own use, can the true owner recover only $400 and legal interest, leaving the wrong-doer to pocket the premium of $400 as the lawful profit of his wrongful act? In such a case proof of the market value of the gold should be admitted, in order to show what damage the plaintiff has sustained. Counsel cited *Meshke v. Van Doren*, 16 Wis., 319, 324; *Williams v. Phelps*, id., 81; Sedgw. on Dam., 266, 498–9; 3 Sandf. S. C., 614.

*C. C. Remington*, for respondent, cited sec. 19, chap. 134, R. S.; 6 Iowa, 243; 6 Allen, 516; 10 Am. Law Reg., 553.

DIXON, C. J. It seems hard and oppressive, and looks very like injustice, where a party has deposited gold coin to be returned in that coin again, that in an action for its recovery he shall only have judgment for the same number of dollars, which may be paid in treasury notes worth half or perhaps less than half the same sum in gold coin; but such is undoubtedly the law, and it is not in the power of this court, nor was it in that of the court below, to relieve the plaintiff or to pronounce a different judgment from that which has already been rendered. The principles governing this case have undergone very full and elaborate examination in several recent decisions, and it seems wholly unnecessary to enter upon any discussion of them here. *Shoenberger v. Watts*, 10 Am. Law Reg., 553; *Wood v. Bullens*, 6 Allen, 516; *Metropolitan Bank v. Van Dyck*, 27 N. Y., 452–459, 471–2, 482–3, and 518–20; *Warnibold v. Schlicting*, 16 Iowa, 243; *Breitenbach v. Turner*, 18 Wis., 140. It is true, since the passage of the legal tender act, and the enormous increase of our currency by the issue of legal tender notes to meet the wants of the government, gold coin has ceased to circulate as money and has become almost exclu-

sively an article of merchandize, bought and sold in the markets at prices varying from day to day according to the laws of demand and supply. This is and always must be the effect of an increase of the currency by the introduction of paper money or a debased metallic coin beyond the requirements of the trade and commerce of the country. The paper money or the debased metallic coin takes the place of the standard gold and silver coin in the circulation, and the latter becomes an article of traffic to be used in foreign commercial transactions where it alone is recognized as the medium of trade and intercourse. But whilst this is so in the real business of the country, yet the fact cannot be recognized by the judicial tribunals. Treasury notes being declared by the law-making power "lawful money and a legal tender in payment of all debts, public and private," except as specified in the act, courts of law can know no other standard of their value than that fixed by the legislature. The law of Congress is the supreme law of the land, and the effect of that law is to make the paper dollar or treasury note, for all purposes within its provisions, precisely equivalent to a dollar in gold or silver coin ; and every contract for the exchange of the one for the other, based upon any difference in the value of either, is strictly illegitimate. Such contracts cannot be enforced in the courts, and depend for their performance entirely upon the commercial honor of the parties or the rules of brokers' boards.

It is for this reason that courts of law cannot receive evidence of any difference in the value of either—that treasury notes are depreciated or gold at a premium. Every lawful dollar being by law of the same value whether represented by the medium of paper or gold, it would be a direct contravention of the statute, as well as a contradiction in terms, for the courts to admit a difference in the value of either. It would be, as is expressed in one of the decisions above referred to, to admit that a lawful dollar, itself the standard of value, can be worth either more or less than a dollar, which is absurd.

For the same reason a court of law cannot, in giving judgment, consider the fact that the money converted or loaned, or agreed to be returned or paid, was gold coin, and render a judgment payable in the same kind of money. The gold and paper money being in contemplation of law always of the same value, not subject to rise or depreciation, the latter is always an exact equivalent for the former, and the party receiving the one cannot be supposed to suffer any injury because he is not paid in the other. A judgment at law upon contract or for damages must be for a certain sum in money, expressed in dollars and cents, which judgment, when rendered, may be satisfied by payment in any of the lawful money of the country. If paid in gold or silver coin, either voluntarily or by levy upon execution, since such coin may be so levied upon and paid over to the creditor, there can be no deduction for premium; and if paid in treasury notes, no greater sum can be demanded.

In making these observations I have intentionally limited them to actions at law. I do not know but a court of equity, in some of the cases coming within its peculiar jurisdiction, might make a distinction between the different kinds of money. It is a cherished principle of that court that a person standing in the relation of a trustee shall take no personal profit or advantage by the illegitimate or improper use of the funds of his *cestui que trust.* He will be compelled to account to the *cestui que trust.* If such a person, having trust funds, consisting of gold coin, should exchange the coin for treasury notes at the rate of one dollar of the former for two of the latter, would the conscience of the court be satisfied by the payment to the *cestui que trust* in treasury notes of a sum numerically the same in dollars and cents as the sum of the gold coin exchanged? Or would the court, which can mould its judgments to meet the exigencies of each particular case, decree a payment in gold coin, or, if not paid in such coin but in treasury notes, order the trustee to account for the full number of dol-

lars actually received in treasury notes in exchange for the gold coin?

It would seem that such would be the rule of equity, but I do not ask the questions for the purpose of answering or expressing any opinion upon them. They are quite foreign to the case under consideration, and are put merely by way of suggestion as to what the practice in equity would be.

*By the Court.*—The judgment of the circuit court is affirmed.