MANKEL, Appellant, vs. BELSCAMPER and wife, Respondents.

*January 12 — January 31, 1893.*

*Tender: Evidence: Conditional offer of payment: Keeping tender good in equity.*

1. The evidence in this case is *held* to sustain a finding of the trial court that there was a tender by defendant of the amount due to plaintiff.
2. One to whom land has been conveyed to secure a loan, under an agreement for a reconveyance upon payment of the amount on or before a certain date, is bound, upon a tender of the entire amount at his residence, to receive the money and execute a deed of reconveyance; and a tender of the amount is not impaired by a demand for such reconveyance.
3. In an equitable action it is sufficient for the party relying on a tender to offer to bring the money into court and to be ready to comply with the direction of the court in regard to it. Circuit Court Rule XVI was not intended to change this rule, but relates to legal actions on instruments for the payment of money only.

APPEAL from the Circuit Court for *Grant* County.

This was an action to foreclose an equitable mortgage, the defendant having caused the lands described in the complaint to be conveyed to the plaintiff as security for the loan of $600, used by him in part payment of the purchase money of said premises, the plaintiff having executed at the same time an agreement to convey the same to the defendant by sufficient deed on the payment of said sum of $600 and interest as follows: $50 on or before January 1, 1887; $100 on or before January 1, 1888; $100 on or before January 1, 1889; $100 on or before January 1, 1890; $100 on or before January 1, 1891; and $150 on or before January 1, 1892. It was claimed that none of the instalments had been paid, nor any interest since January 1, 1889. Judgment was demanded for the first five instalments, amounting to $450, and interest from January 1, 1889, and for the sum of $150, the remaining instalment to become due January 1, 1892.

The defense was that on or about the 31st day of December, 1889, the defendant borrowed the amount to pay off the entire sum secured by the deed and agreement, with interest, and tendered the same on that day to the plaintiff in payment thereof, namely, $642, and demanded that she receive the same and convey the premises to defendant, but the plaintiff refused to receive it; that he has ever since then been ready and willing and by his answer offered, to pay said sum to the plaintiff; that she has during all that time refused to receive it; and that he has demanded that she convey said premises to him as provided in the agreement, which she has refused and neglected to do. Judgment was demanded that she be adjudged and decreed to make, execute, and deliver to him a sufficient deed of conveyance, etc., and for other relief.

Defendant testified, among other things, that the plaintiff made demand of him for her money one Friday night to be paid before Monday morning; that during that time he got it, and went to the house, and asked them if they would take the money if they got it all, and they said, "No;" they would not.. "I asked if they would give me a deed. They said 'No.' I told them that the contract read, 'On or before;' and they said that was for them to say, and not me, and shut the door in my face." Objection on the part of the plaintiff was made to proving any tender of the money, on the ground that if made it was not kept good, the defendant having failed to deposit the money in court and serve a certificate of deposit within five days after serving the answer setting up such tender. The deposit in court was made and certificate thereof served, October 12th, twenty-three days after service of answer. The court overruled the objection, and witness testified that he took the money to the home of the plaintiff in a large pocketbook, opened it, took out the money, and said, "'Here is $642 I tender you in payment of what I owe

Mankel vs. Belscamper and wife.

you up to the present time, and I demand a deed according to the contract;' and they said they would not give me a deed, and never said a word about taking the money and giving me a receipt. Henry, plaintiff's son, said, 'You can throw the money here on the floor.' I said, 'No; I don't propose to do that;' and I told them, 'You can give me a deed, and take the money;' and I says, 'I don't propose to come here any more about it. You can give the deed to Bushnell & Watkins. I will leave the money with them.' I deposited the money in Meyer's bank the next day, and told them at the time that it would be deposited. They said they would take what was due, but not any more. *Mrs. Mankel* didn't have much to say. She claimed she didn't want to give any deed. I demanded the deed according to the contract, and tendered the money." One Blackburn testified on the part of defendant as to what occurred at the house in substance as stated by defendant. Testimony was given to show that Henry Mankel, plaintiff's son, had attended to business for the family, and that he afterwards came to the office of Mr. Watkins about the matter, who was acting for the defendant, when he told him that the money was in the bank, and that he could have it any time, and urged him to take it; that "he said he would take it if it was brought out to the house, and I or somebody else would go along and draw the deed;" that Watkins then offered to make a deed for him to take out, but he declined to do it; said his mother was not well; and he told him when she was able to attend to it the money was there for them. "On the 16th of January he told me they had prepared a deed, and would receive their money any time it was brought out to the house," and showed a deed which was satisfactorily executed that day. Watkins told him the money was at the bank, and offered to go and get it. He would not do so, but said the money must go out there; that, if he took the money there, *Belscamper*

would crow over them; and that he must come to the house with it.

Henry Mankel gave a different version of the matter in relation to the tender, saying that he told the defendant, any time he would bring a man down competent to make a deed he would accept the money and make the deed, or when his mother was able to be out. He said that, at the house, he told him: "If you have got all the money we will take your money. We will give you the old deed, and give you the deed that Mrs. Day made, and the contract. That is all we can do at the present." He claimed that he was not authorized to receive the money when Watkins said he had it at the bank; that he demanded payment of what was due, which was all that he had a right to demand. John Mankel also testified about to the same effect, and also *Anna G. Mankel*, the plaintiff.

The court found that on December 31, 1889, the full amount due on the contract was $642, and that upon that day the defendant, at the residence of plaintiff, tendered and offered to pay her said sum, which the plaintiff refused to receive; that he afterwards in Lancaster, by his attorney, offered to pay said amount to the plaintiff's son, who acted as her agent in this matter, but he refused to receive it; that said sum, after the said offer of payment December 31st, was deposited in the bank at Lancaster, subject to the order of the plaintiff, and had there so remained until the commencement of the action; and that the defendant had paid the same into court for the plaintiff; and, as conclusions of law, that the defendant should pay the plaintiff, in addition to said $642 then in court, the further sum of $42, as further interest upon said contract, and that the plaintiff should lose all further interest which would and has accrued thereon according to the terms aforesaid; that on such payment the defendant to be entitled to a conveyance by sufficient deed of the property described, and

Mankel vs. Belscamper and wife.

neither party to recover costs, but each to pay his own. Judgment was rendered accordingly, the defendant having paid in the additional $42. The plaintiff appealed.

For the appellant there was a brief by *Clark & Taylor,* and oral argument by *S. H. Taylor.* They contended, *inter alia,* that the alleged tender was upon condition that the plaintiff should then and there deliver to the defendant a deed of the premises, and was therefore insufficient. *Hunter v. Warner,* 1 Wis. 147; *Elderkin v. Fellows,* 60 id. 339; 2 Greenl. Ev. sec. 605; *Fuller v. Hubbard,* 6 Cow. 13, 7 id. 53; *Dodge v. Hopkins,* 14 Wis. 635; *Dye v. Montague,* 10 id. 20. The tender was not kept good. Circuit Court Rule XVI; *Becker v. Boon,* 61 N. Y. 321; *Sheriden v. Smith,* 2 Hill, 538; *Musgat v. Pumpelly,* 46 Wis. 669; *Smith v. Phillips,* 47 id. 205; *Hoffman v. Van Diemen,* 62 id. 362.

For the respondents there was a brief by *Bushnell & Watkins,* and oral argument by *R. A. Watkins.* They argued, among other things, that if the tender was made on condition of making a deed, that was a condition to which in this case plaintiff could not reasonably object, and it would not invalidate the tender. 2 Parsons, Cont. 644; *Loughborough v. McNevin,* 74 Cal. 250; *Wheelock v. Tanner,* 39 N. Y. 481.

PINNEY, J. The testimony in respect to the tender pleaded by the defendant is somewhat conflicting in some particulars, but the circuit court found that the tender was proved, and that the defendant was entitled, in consequence, to the relief sought by his counterclaim. It is certain that there is no such decided preponderance of proof of evidence against the finding on any material point as would justify this court in coming to any different conclusion, in view of the fact that the circuit judge had advantages for testing the credibility of the witnesses who testified in

Mankel vs. Belscamper and wife.

open court on the trial which this court cannot possess. It is evident that, at or about the time of the tender, the plaintiff, in an angry mood, notified the defendant that unless the moneys then due on the contract were paid by the following Monday morning, an action would be brought against him, and, on application of the defendant, he was informed that the plaintiff would not take all the money called for by the contract, but would insist on receiving only that which had already become due, and this was after the defendant had made a loan for the purpose of paying up the entire sum secured, with interest. This was the matter in dispute between them. He desired to pay all, and she insisted that she would receive only a part of the moneys secured. The contract gave the defendant the right to make payment at any time before maturity. Tender of the entire amount was made to the plaintiff at her residence, and it is plain from the testimony that she had no intention of taking it, but was rather actuated by a disposition to subject the defendant to difficulty and embarrassment. It was her duty at that time to have received the money, and to have executed to the defendant the deed of conveyance of the premises in question. He was under no obligation to have taken with him a notary or other person to have prepared the deed. The tender was not impaired by the fact that he demanded a deed, for he did not insist upon any condition except such as the plaintiff was clearly in duty bound to perform at the time of payment, by the contract. She was notified at the time that the money would be deposited in the bank at Lancaster, and the deposit was made accordingly. Subsequently her son called upon Mr. Watkins, in whose hands the defendant had left the matter, at Lancaster, and exhibited a satisfactory deed to the defendant, when Mr. Watkins proposed to go with him to the bank and get the money. The son declined to do this, and perhaps denied his authority

to receive it; but we cannot consider that this point was well founded in fact, or raised for any other purpose than to embarrass the defendant and subject him to the trouble of taking the money out to where the plaintiff lived. He insisted that " the money must go out there." It is plain from what took place at the house, from his calling upon Mr. Watkins with the deed, and from all the facts and circumstances in the case, that he had ample authority to deliver the deed and receive the money. It is certain that both he and the plaintiff knew very well that they could get the money tendered at any time without difficulty, upon the delivery of the deed. They knew the money was awaiting her acceptance. Matters were suffered to remain in this condition for nearly two years without bringing an action. The evidence abundantly shows that there was not the slightest necessity for bringing it, and it seems to us to have been instituted through an unreasonable and litigious spirit. After the action was brought, the defendant paid the money tendered into court for the plaintiff's use, and it remained there until the decision of the cause.

The only real question in the case is whether the defendant, by failing to pay the money into court and to deliver a certificate thereof within five days after interposing his counterclaim, lost the benefit of his tender, and whether the case is within the provisions of Rule XVI of the circuit court rules, providing for tender and payment of money into court. The counterclaim is in the nature of an action for redemption of the premises and to compel a conveyance of the legal title, a tender of the amount due having already been made. It is strictly an equitable action. Had the mortgage been in form a legal mortgage, the tender would have discharged the lien, whether kept good or not (*Breitenbach v. Turner*, 18 Wis. 140; *Kortright v. Cady*, 21 N. Y. 343), and evidently in equity entitled the defendant to the conveyance he sought. In *Breitenbach v. Turner*,

Mankel vs. Belscamper and wife.

*supra,* it was held that in equity it is sufficient for the
party relying on a tender to offer to bring the money into
court, and to be ready to comply with the direction of the
court in regard to it.   It is objected that the tender failed
because the money was not paid in and certificate deliv-
ered within the five days specified by the rule.   It is well
established that the rules in respect to tender are much
more liberal and flexible in equity than at law.   It was not
the intention in adopting the rule in question to modify or
change the decisions which had theretofore been made by
the court in respect to tender of payment and readiness to
pay in equitable actions.   The rule evidently relates to legal
actions on instruments for the payment of money only;
that is to say, where the recovery of it is the sole purpose
of the action, so that the party entitled to take the money
out of court may do so as of right, and thus terminate the
controversy.   In equitable actions the disposition of the
money, and the determination of the ultimate rights of the
parties in respect to it, are usually subject to the control
and determination of the court at the hearing. It is argued
for the appellant that the statute (secs. 4265, 4266, R. S.).
on the subject of tender applies to equitable as well as to
legal actions.   These provisions have been in force since
the statute of 1849.   R. S. 1849, ch. 93, secs. 1, 3, 4; R. S.
1858, ch. 126, secs. 7, 9, 10.   The circuit court rule was not
intended to be broader than the statute, or to disturb or
modify the decisions on the subject made in equitable
actions under it.   We think, therefore, that the case of
*Breitenbach v. Turner,* 18 Wis. 140, is decisive, and that
the tender was originally good, and that it was kept in
force and maintained until the decision of the action.   It
therefore stopped interest; and, as the plaintiff was in de-
fault for not performing her duty in the premises by exe-
cuting and delivering her deed, her action should have been
dismissed, and the defendant granted the relief sought by

him.   Costs were in the discretion of the court, and the
plaintiff is in no position to claim that the court exercised
this discretion improperly.   We think there is no error in
the judgment of the circuit court, and that it ought to be
affirmed.

*By the Court.*— The judgment of the circuit court is
affirmed.