*J. S. Ayers, Clifford Pratt,* and *C. M. McClure,* for defendant.

## LANIER v. MANDEVILLE MILLS.

No. 11630. JANUARY 14, 1937.

*Willis Smith,* for plaintiff. *Boykin & Boykin,* for defendant.

HUTCHESON, Justice.   J. C. Lanier brought his petition against Mandeville Mills, a corporation, alleging substantially as follows: Petitioner is the holder of a deed recorded on January 6, 1933, executed by N. G. Mitchell, conveying certain described property in Carroll County for the purpose of securing a certain debt and future advances.   On January 7, 1933, Mitchell filed suit against the First National Bank, the Peoples Bank of Carrollton, and Mandeville Mills, alleging that in 1925 he had executed a security deed to the First National Bank conveying the same property to secure a loan and future advances, which loan was later renewed to the Peoples Bank of Carrollton, which succeeded the first-named bank.   The notes evidencing this loan (on which there was a balance due of $97) and the security deed were transferred to Mandeville Mills.   Mitchell tendered to Mandeville Mills the balance due, and demanded cancellation of the security deed and surrender of the note.   This tender was refused by Mandeville Mills, on the ground that it was entitled to hold said deed as security for other indebtedness due to it by Mitchell, by reason of recitals in the security deed and in the note evidencing the other indebtedness, that the deed was to secure the payment of the debt described therein, "as well as to secure the payment of any other indebtedness now or hereafter owing to the said party of the second part by said party of the first."   The note already held by Mandeville Mills, prior to the transfer of the security deed, contained the following recital: "Said payee being expressly authorized to retain any general or special deposit, collateral, real or personal security, or proceeds thereof belonging to us, now or hereafter in possession of said payee during the time this note remains unpaid, and before or after maturity apply same to this or other debt or liabilities to said payee due or to become due to the holder of this note."   Mitchell tendered into court the balance due under the security deed, and prayed for cancellation of the deed and that the sale thereunder be enjoined.   Mandeville Mills then sued out an attachment against Mitchell, which included both the prior indebtedness and the indebtedness under the security deed transferred to it. The attachment was levied on the prop-

erty, and the suit under the attachment was consolidated with the suit by Mitchell, and the case submitted to the judge upon an agreed statement of facts. Judgment was rendered for the entire indebtedness, and the judgment was decreed to be a special lien upon the property. On writ of error this court affirmed the judgment (*Mitchell* v. *Mandeville Mills,* 180 *Ga.* 791, 180 S. E. 828), holding that the ruling of the trial court, "in so far as it creates a lien upon all the land, is a correct ruling by virtue of the attachment proceeding; but, as herein pointed out, the transferred security deed carried a lien on the property therein described only in so far as the indebtedness covered by the deed is concerned." The petition of Lanier alleges that the security deed held by him is a lien prior to that of the attachment, and that it is also prior to the security deed held by Mandeville Mills, because the tender into court by Mitchell in his suit released the "lien" of said security deed; "that Mandeville Mills is now seeking to sell said property to satisfy all of said indebtedness, and has advertised said property for sale under the power contained in the deed" transferred to Mandeville Mills, "and that said property has been advertised for sale on the first Tuesday in December, and that unless a court of equity intervenes and restrains said sale it will be sold." The prayers are for injunction and cancellation. By amendment the petitioner prayed for judgment against Mitchell on the secured debt due to petitioner, and that Mitchell be made a party defendant. The court sustained demurrers to the petition and amendment, and dismissed the case. The petitioner excepted.

■ In order to ascertain the principles of law applicable to the facts of the present case, we must first look to the allegations and prayers of the petition together with the exhibits attached thereto, and determine what facts are sufficiently pleaded and the issues made thereby. There is no allegation that the property involved has been or is being advertised for sale under the judgment rendered in the attachment proceedings; so it is not necessary to decide the question of priority between the petitioner's security deed and the lien of the attachment, or whether, if the security deed is prior thereto, the petitioner would be entitled to enjoin a sale thereunder. As we construe the petition, the only issue presented is whether Mandeville Mills, by refusing the tender made by Mitchell, so relinquished its rights under the security deed as to

lose its priority thereunder as against the subsequent security deed executed by Mitchell to the petitioner. Inasmuch as the petitioner is predicating his right to the relief prayed for on the legal effect of the tender made by Mitchell, his rights are necessarily dependent upon whatever rights Mitchell might have in the premises. In *Bourquin* v. *Bourquin,* 120 *Ga.* 115, 119 (47 S. E. 639), involving a tender to a purchaser at a tax sale, this court said: "Where a creditor refuses to accept a proper tender, the claim is not extinguished, nor is the debtor harmed by the refusal. He still has his money. He may lend it or use it in business. If, however, he wishes to stop the running of interest, or to prevent the accrual of costs, he must keep the tender good. Civil Code, § 3728 [Code of 1933, § 20-1105]. But where the creditor has collateral, mortgage, or other form of security upon the property of the debtor, the failure to accept a legal tender discharges the lien which was intended to secure payment. When it has accomplished its purpose, it ought no longer to be effective against him who has done all required by the law or the contract to cancel the mortgage or to regain possession of the pledge. The debtor offers the money for the twofold purpose of paying his debt and redeeming his property. The creditor may indeed decline to receive what is due, but he can not couple with his declination a refusal to cancel the lien or surrender that which thereafter belongs to the debtor free from the incumbrance. The debtor may wish to use the property pledged. He may wish to sell that which is incumbered, and by the act of the creditor in refusing proper tender he is prevented from having and using his own. It is evident that to allow such results would often work manifest hardship; and hence the rule, recognized by most of the authorities, is that upon the proper tender being made, while the original debt may continue, the lienor is entitled to a satisfaction of the lien or to be restored to possession of the property. One of the ways for enforcing this right is the provision that the refusal of a proper tender discharges the lien. The debt continues, 'but the tender is equivalent to payment as to all things which are incidental or accessorial to the debt. The creditor by refusing to accept does not forfeit his right to the thing tendered [money], but he does lose all collateral benefits or securities.' *Tiffany* v. *St. John,* 5 N. Y. 314; *McCalla* v. *Clark,* 55 *Ga.* 53." See also *Kortright* v. *Cady,* 21 N. Y. 343 (78

Am. D. 145) ; Tuthill *v.* Morris, 81 N. Y. 94; Werner *v.* Tuch, 127 N. Y. 217 (27 N. E. 845, 24 Am. St. R. 443) ; Renard *v.* Clink, 91 Mich. 1 (51 N. W. 692, 30 Am. St. R. 458) ; Union Mutual Life Ins. Co. *v.* Union Mills Plaster Co., 37 Fed. 286 (3 L. R. A. 90) ; Murry *v.* O'Brien, 56 Wash. 361 (106 Pac. 840, 28 L. R. A. (N. S.) 998) ; Mankel *v.* Belscamper, 84 Wis. 218 (54 N. W. 500) ; Salinas *v.* Ellis, 26 S. C. 337 (2 S. E. 121) ; 2 Jones on Mortgages (7th ed.), 452, § 893 et seq.; 41 C. J. 797, § 920 et seq.; 19 R. C. L. 446, § 230 et seq.; 8 Ann. Cas. 363, note.

The refusal of a tender, however, must have been unqualified and unaccompanied by any bona fide claim of right. If the creditor honestly believes that the tender is not legally sufficient, because of a mistake as to his legal rights, and refuses it for that reason, such refusal does not operate as a discharge of the security conveyed. Union Mutual Life Ins. Co. *v.* Union Mills Plaster Co., supra; Renard *v.* Clink, supra; Reynolds *v.* Price, 88 S. C. 525 (71 S. E. 51) ; Crain *v.* McGoon, 86 Ill. 431 (27 Am. R. 37). Applying the above rulings to the present case, it appears, there being no allegation to the contrary, that the tender made by Mitchell to the Mandeville Mills was refused under a bona fide claim of right on the mistaken belief that it could retain the security deed as security for other debts owed to it by Mitchell. It is true that Mitchell also made a tender into court, but we are of the opinion that such tender did not effect a discharge of the security, the situation of the parties remaining unchanged until the decision of this court apprising Mandeville Mills of its mistake in attempting to hold said security deed as security for debts other than that which it was given to secure. There is no allegation that since the decision by this court in *Mitchell* v. *Mandeville Mills,* supra, Mandeville Mills has refused to accept a tender of the amount due under the security deed held by it; nor does it appear that said case, in which a tender was made into court, is still pending. So far as appears from the allegations of the petition, Mitchell, after the decision rendered by this court, may have abandoned his suit, and in that event there would not have been any tender for Mandeville Mills to accept after the ruling by this court to the effect that it had no right to refuse the tender made. There is no tender made by the petitioner in the case at bar, and it does not appear that Mandeville Mills has had the op-

portunity of refusing or accepting payment of its debt since the adjudication of the previous case against it. So we hold that under the case made by the petition Mandeville Mills is entitled to proceed with the sale of the property under power contained in the security deed for payment of the debt thereby secured.

The petitioner in his brief and argument contends that Mandeville Mills is advertising the property for sale under the power contained in the security deed, for the purpose of applying the proceeds of the sale to the payment of the other debts owed to it by Mitchell, contrary to the previous, decision of this court, and that petitioner is entitled to have any surplus applied to the payment of the debt owed to him by Mitchell and to have said surplus impounded for said purpose. · This contention necessarily depends solely on the allegation "that Mandeville Mills is now seeking to sell said property to satisfy all of said indebtedness *and* has advertised said property for sale under the power contained in the deed," etc. This allegation, even if not a conclusion of the pleader, is ambiguous to say the least, and should be construed most strongly against the pleader. When construed in connection with the advertisement of sale (attached to and made a part of the petition), which recites that the sale is being had for the purpose of paying the debt which the deed was originally given to secure, and that any surplus will be turned over to Mitchell as provided by law (Code, § 67-1206), and the fact that there is no prayer that said surplus fund be impounded and applied to, the payment of the debt owed to petitioner, and no averments in the petition which might aid in the construction of such allegation, it will not, in the absence of more definite allegation, be construed as alleging that Mandeville Mills is proceeding directly contrary, and in opposition, to the ruling of this court. "A petition either in law or in equity must plainly, fully, and distinctly set forth a cause of action (Code, § 81-101) ; and it is equally important that the facts upon which the petitioner relies for recovery should clearly and distinctly show that he has a cause of action (*Anderson* v. *Swift,* 106 *Ga.* 748, 750, 32 S. E. 542), and the 'facts must be so plainly and fully and distinctly set forth as to inform the opposite party of the grounds of plaintiff's action, to enable the jury to find an intelligible and complete verdict, and to enable the court to declare distinctly the law of the .case.' *Murphy* v.

722

*Lawrence, 2 Ga.* 257, 258." *Powell* v. *Wood,* 182 *Ga.* 630 (186 S. E. 675). While the niceties of pleading required under the common law will not be invoked, the allegations in a petition must be sufficiently definite to enable the court to determine the law applicable to the case, from what is actually alleged in the petition, and not by supposition and conjecture as to what might have been the intention of the pleader. This rule should be particularly applicable where the petitioner is seeking to invoke the harsh remedy of injunction. Under the construction we have placed upon the petition and the law applicable, the petition failed to set forth a cause of action for the relief prayed for.

■ The amendment seeking to make Mitchell a party defendant to the suit, and praying judgment against him on the debt owed by him to petitioner was not germane, nor was the relief sought therein appropriately comprehended within the scope of the original proceeding. Such relief was merely collateral to that involved in the case under which, in the first instance, the court assumed jurisdiction. *Vason* v. *Clanton,* 102 *Ga.* 540 (29 S. E. 456); *Rogers* v. *Rogers,* 183 *Ga.* 131 (187 S. E. 633). The court did not err in sustaining the demurrers to the petition and the amendment, and in dismissing the action.

*Judgment affirmed.   All the Justices concur.*