CHESTER DOWNER *v.* JAY WILSON, JAMES J. WILSON, HIAL HATCH, HIAL A. HATCH, SOLOMON DOWNER, J. WARREN MANN AND J. P. KIDDER.

(IN CHANCERY.)

*Mortgage. Subrogation. Chancery.*

A subsequent incumbrancer, or one who has acquired a legal or equitable interest in mortgaged premises, who pays off a prior incumbrance, if he is

so situated that it becomes his interest and duty to make the payment for his own protection, may be treated as the equitable assignee of such prior mortgage, and may keep it on foot, as against persons having intervening incumbrances upon the land.

*Aliter* with a mere volunteer.

The orator, at the request of W., against whom a decree of foreclosure had been rendered, which was about expiring, agreed to advance the money to pay the decree; and in consideration thereof W. executed to him a note, solely for usurious interest on such advance, and gave him a mortgage to secure such note, and at the same time gave him collateral security for the amount to be advanced. The orator was not otherwise connected with the mortgaged premises. *Held,* that the orator was not entitled, by reason of having paid the prior incumbrance under such circumstances, to be subrogated to the rights of such prior incumbrancer, as against those whose claims to the premises intervened between such prior incumbrance and his own.

No decree can be made relative to matters happening subsequent to the bringing of a bill in chancery, unless they are brought into the case by some proper supplemental proceeding.

BILL IN CHANCERY. The bill set forth in substance that the defendant, Jay Wilson, being indebted to the orator in a promissory note for fifty dollars, dated April 19th, 1858, on that day executed to the orator, for the purpose of securing such note, a mortgage deed of certain land, which Wilson had previously mortgaged to one Flinn, upon which last mentioned mortgage Flinn had in 1855 obtained a decree of foreclosure against Wilson and others, requiring the defendants in such decree to pay Flinn a certain sum in ten annual installments, becoming due respectively on the 20th of April in each successive year, or be foreclosed ; that Jay Wilson paid the two first installments due on such decree, and that the orator, on the 20th of April, 1858, paid, in order to protect and save his mortgage interest in the premises, the third installment, being two hundred and ninety-six dollars ; and that the other defendants in this bill claimed to have acquired interests in the premises in question subsequent to the execution of the Flinn mortgage. The bill prayed that the defendants be decreed to repay to the orator the money which he had been obliged to pay on the Flinn decree to protect his mortgage interest, and also to repay to him all sums which he might thereafter be compelled to pay upon the same decree for the same

purpose; and that the orator be subrogated to the rights of Flinn in his decree so far as he had paid, or should thereafter be compelled to pay, upon it, and that the defendants, in default of paying to the orator such sums by the respective times to be fixed by the chancellor, might be foreclosed of all equity of redemption in the premises.

The bill was taken as confessed against all the defendants except Hial Hatch and Solomon Downer, whose answers stated that the orator made the payment on the Flinn decree set forth in his bill, under the following circumstances: That on the 19th of April, 1858, the defendant Jay Wilson applied to the orator to borrow money of him to make the payment on the Flinn decree, which fell due on the next day; that it was then agreed between the orator and Jay Wilson that the former should make such payment for the latter, and that Wilson should repay to him the amount thereof with interest; that Wilson turned out to the orator certain notes against one Rogers, exceeding the amount of such payment, as collateral security for the sum the orator should so pay; that, as extra interest and to induce the orator to advance the money and make such payment on the decree, it was further agreed that Wilson should give to the orator the fifty dollar note described in the bill, and secure the same by a mortgage of the land in question; that the orator's note and mortgage were given in pursuance of this agreement and for no other consideration, and that the claims of the defendants Hial Hatch and Solomon Downer to the mortgaged premises were valid and *bona fide* claims based upon conveyances given by Wilson to them respectively, and that they were both prior to the orator's mortgage.

These answers were traversed and testimony taken, which, as appears by the opinion of the court, tended to support the answers.

It further appeared at the time of the hearing before the chancellor, that after the bill was brought, the orator had paid to Flinn the fourth installment under his decree of foreclosure, which fell due on the 20th of April, 1859.

The chancellor, REDFIELD, Ch. J., at the December Term, 1859, dismissed the bill, and the orator appealed.

*Converse & French*, for the orator.

*A. P. Hunton*, for the defendants.

POLAND, J. The orator claims that by virtue of the payment made by him of the installment of the decree to Flinn, he became in equity the assignee of that mortgage to that extent, and entitled to set it up as an incumbrance, having priority to all those defendants who had acquired interests in the premises subsequent to the Flinn mortgage.

This claim is based wholly upon the ground that he had taken a subsequent mortgage of the premises from Wilson, the mortgagor, and was therefore entitled to redeem that mortgage, and that this payment he was compelled to make in order to protect and save his interest in the mortgaged premises.

The principle is well settled that a subsequent incumbrancer, or one who has acquired a legal or equitable interest in mortgaged premises, who pays off a prior incumbrance, may be treated as the equitable assignee of such prior mortgage, and keep it on foot, as against persons having intervening incumbrances upon the land.

The important inquiry in the present case is whether the orator has acquired such an interest in the premises, and made this payment under such circumstances that he is entitled to have this effect given to this payment. It is not claimed that the mere fact that he furnished the money to make the payment by arrangement with Wilson, the mortgagor, even though Wilson agreed he might stand in the shoes of the original mortgagee, would entitle him to thus acquire such a right against the intervening incumbrancers, however it might be as against Wilson himself. As to them it would extinguish so much of the preceding mortgage, as if paid by Wilson himself, for if the orator had no interest in the premises, he stood as to them as a mere stranger and volunteer. The orator was not in form a purchaser of so much of the Flinn mortgage, nor had he any assignment of it. It was in form a payment and discharge of that mortgage to that extent, and, in order to enable the orator to set it up in equity as a purchase and assignment to him, he must stand in a situation in reference to the property so that it became his interest and duty to make this pay-

Downer *v.* Wilson et al.

ment for his own protection. The payment then is considered as not voluntary but compulsory, and entitles the party paying to stand in the place of the party receiving the money, and to be subrogated to his rights.

What was the true position of the orator when he advanced the money to make the payment upon the Flinn mortgage?

He had no connection with the premises or the transaction until Wilson, the mortgagor, who was seeking to raise the money to make this payment, applied to him to loan or advance the money for that purpose. Upon Wilson's application for that purpose he agreed to advance the money to pay the installment due upon Flinn's decree by Wilson's giving him a *bonus* of fifty dollars, and executing to him a note therefor secured by a mortgage upon the premises. Wilson executed his note of fifty dollars to the orator, and gave him a mortgage of the premises to secure the same, and at the same time the orator delivered over the money to Wilson to pay the installment due upon the decree.

The orator insists that this made him an incumbrancer so that his payment upon the decree was compulsory and not voluntary. But could he properly be considered as an incumbrancer; had he any valid mortgage upon the premises? The orator says in his testimony that the note of fifty dollars was given to him for his trouble in the matter, and in raising the money, but we do not see that he was put to any other or different trouble or inconvenience, than every man is who advances money on a loan. Without taking any time to enlarge upon the refinement by which it is sought to find a legal consideration of a peppercorn's value, to sustain this note and mortgage, it is enough to say that we regard it as entirely clear that this note was given solely for usurious interest upon this advance or loan of the money, and therefore had no legal consideration or validity, and that the orator's position is not at all strengthened by having such a note and mortgage. The pretence that the orator was compelled to pay off this installment of the mortgage decree in order to protect his interest and right under his mortgage, becomes ludicrous when it is recollected that his mortgage debt was wholly for usurious interest agreed to be paid for advancing the very money to make the payment. Instead of being compelled to pay the money to

protect his interest under his mortgage he obtained his mortgage merely in consequence of his agreement to pay the money and to protect him in so doing. It was all one transaction ; the money was advanced upon the request and application of the mortgagor ; the note of fifty dollars and the mortgage to the orator were given in connection with the advance and in consequence of it, and as usurious interest for the money advanced. It appears to us that the orator stands hardly as well as if he had advanced the money upon a naked contract with Wilson that he should be subrogated to the right of the first mortgagee. That would have made him a mere volunteer, while, as it stands, he appears to have seized this opportunity to make an unconscionable and usurious speculation.

Under the circumstances of the case, we think this advance of money by the orator can be regarded as nothing but a loan of the money to Wilson. It was advanced at the request and procurement of Wilson ; he gave the orator his note for usurious interest to advance it, and at the same time put into the orator's hands the Rogers notes for a greater amount as collateral security. The orator will not distinctly admit in his testimony that he took those notes as security for this advance of money, but the receipt he gave was in such terms as to include it, and it does not appear there was anything else either existing, or in contemplation, that it could apply to. The orator says it was talked between him and Wilson that they might make some other trades, but what trades or upon what subject he is wholly unable to state. We are satisfied he took them as security for this advance of money.

We think, therefore, that this payment by the orator, made by the procurement of the mortgagor, and for which he agreed to pay the orator usurious interest, and gave him security for payment, must, as to the defendants having intermediate rights in the property, be regarded as a payment and satisfaction by the mortgagor himself, and that the orator has no equitable ground upon which he can stand to keep it on foot against them, on the ground that he was compelled to pay it.

It is argued for the orator that he ought to have this preference over the defendants because, unless he had furnished the money to pay this installment of the decree, these defendants

would have been compelled to pay it, or have lost their rights in the premises. But this by no means follows. It was the duty of Wilson, the mortgagor, to make the payment and relieve the premises, and he was endeavoring to raise the money for that purpose when he made the arrangement with the orator, and we see no ground to suppose that he would not in some way have raised the means do so, and if he did not the defendants might have arranged perhaps with the original mortgagee to have had the benefit of his decree, and thus have benefitted themselves in that way.

In relation to the payment of the fourth installment upon the decree, made by the orator since the pendency of this suit, there is no occasion now to decide whether he stands in any different condition than as to the other. Whatever might be the disposition of the case upon the matters set up in the pleadings, no decree could be made upon matters happening since, not brought into the case by some proper supplemental proceeding.

The decree of the chancellor, dismissing the orator's bill as to Hial Hatch and Solomon Downer, is affirmed with costs in this court, and the case remanded to the court of chancery to be there perfected.