[No. 8387.  Department One.  December 16, 1909.]

JAMES A. MURRAY, *Appellant*, v. TERRENCE O'BRIEN, *Administrator of the Estate of John Sullivan, Deceased, et al., Respondents*, MERCANTILE INVESTMENT COMPANY, *Intervener and Respondent*.[1]

MORTGAGES — FORECLOSURE — INTERVENTION — SUBROGATION. The owner of a half interest in mortgaged property, acquired after the commencement of suit to foreclose the mortgage, has a right to intervene in the foreclosure suit and make a tender with a view of being subrogated to the rights of the mortgagee against his co-owners.

SUBROGATION—NATURE AND RIGHT—PAYMENT OF MORTGAGE. The right of subrogation applies to an owner of an undivided half interest in mortgaged property who tenders the mortgage debt with

[1]Reported in 105 Pac. 840.

a view of saving his interest in the property; since subrogation requires no contract or privity and he is not a mere volunteer in discharging the debt of his co-owners.

SUBROGATION — PROCEEDINGS — MORTGAGES — PAYMENT BY PART OWNER. On the principle that a court of equity having acquired jurisdiction for one purpose will retain it for all purposes, a plaintiff in a suit for the foreclosure of a mortgage cannot object to any procedure whereby the owner of a half-interest in the property may, on tendering the debt, become subrogated to the plaintiff's rights against the co-owners.

SAME. In such a case it is not a valid objection by the mortgagee to such subrogation that the co-owners are willing to pay their part of the debt, since the mortgagee owes no duty to third persons, whom the court will protect by its orders; especially where there is nothing to show that privilege of payment was denied such parties.

.SAME—SATISFACTION OF MORTGAGE—EFFECT—TENDER—POWER OF COURT TO ORDER SUBROGATION. It is unnecessary for the owner of a half-interest in mortgaged property, acquired after commencement of the foreclosure suit, to begin a suit to enjoin satisfaction of the mortgage upon tender made, or to intervene in the action for the purpose of being subrogated to the rights of the mortgagee; since satisfaction of the debt would not destroy the right of subrogation, and upon payment into court, the court could enter an order recognizing the subrogation without any forfeiture of rights.

TENDER—SOURCE OF MONEY—MATERIALITY. Upon a tender of a mortgage debt, it is immaterial from what source the money comes.

MORTGAGES—TENDER—EFFECT—DISCHARGE OF LIEN—KEEPING TENDER GOOD. Tender of the amount due on a mortgage before law day, extended by construction until suit commenced, discharges the lien of the mortgage, and the tender need not be kept good by bringing it into court.

SAME—"FORECLOSURE" AND "LAW DAY." In the rule for the discharge of a mortgage by tender before law day or at any time before foreclosure and sale, "foreclosure" and "law day" are synonymous terms, and mean the "institution of the suit" as contradistinguished from the "law day" of the common law; and "law day" does not, as to a tender *inter partes*, extend to the day of sale.

SAME—DISCHARGE OF LIEN BY TENDER—TO WHOM AVAILABLE. The rule that a tender discharges the lien of a mortgage does not avail one who is seeking affirmative relief and asking the cancellation of the debt.

TENDER—CONSTRUCTION—CONDITIONS. An unconditional tender cannot be measured by two qualified tenders made immediately before on the same day.

SAME—TENDER AFTER SUIT BROUGHT—PURPOSE—CONSTRUCTION—
EFFECT. Where the owner of a half-interest in mortgaged prop-
erty, acquired after suit for foreclosure was commenced, intervened
and tendered the debt due, and asked for subrogation to the rights
of the mortgagee, both in the foreclosure suit and in an independ-
ent action to enjoin cancellation of the mortgage, the tender should
be considered as made in aid of the affirmative relief prayed for;
and hence the same cannot be urged to secure a discharge of the
mortgage lien and a consequent loss of the debt through a failure
to present a claim therefor to an administrator, contrary to equity
and to the relief originally sought.

TENDER—NECESSITY OF KEEPING GOOD—EQUITY. The rule at law
that a tender must be kept good or paid into court. does not apply
in equity, as a willingness to pay may alone be sufficient; irrespec-
tive of Bal. Code, §§ 5176, 5177, providing that money may be paid
into court and thus arrest interest and costs.

SAME—EFFECT IN EQUITY—ARRESTING INTEREST. An uncondi-
tional tender of the amount due on a mortgage, after pleading a
willingness to pay in full, which was refused by the mortgagee in
the hope of gaining some personal advantage, arrests the interest
from the date of the tender.

Appeal from a judgment of the superior court for King
county, Main, J., entered June 18, 1909, upon findings in
favor of the defendants, after a trial on the merits before the
court without a jury, in an action to foreclose a mortgage.
Reversed.

*Trumbull & Trumbull* (*Hughes, McMicken, Dovell & Ram-
sey*, of counsel), for appellant. The intervener had no right
to intervene. Bal. Code, § 4846; *Westland Pub. Co. v.
Royal*, 36 Wash. 399, 78 Pac. 1096; *McNamara v. Crystal
Min. Co.*, 23 Wash. 26, 62 Pac. 81. And its complaint in
intervention did not state sufficient facts to entitle it to any
relief. *Davis v. Flagg*, 35 N. J. Eq. 491; *Morris v. Tuthill*,
72 N. Y. 575. The mortgagee could not be compelled to
assign the mortgage. *Lamb v. Montague*, 112 Mass. 352;
*Butler v. Taylor*, 5 Gray 455; *Ellsworth v. Lockwood*, 42
N. Y. 89; Jones, Mortgages (6th ed.), § 792. The com-
plaint states no cause of action on the theory of subroga-
tion, since subrogation would take place by operation of law

upon payment. 1 Jones, Mortgages (6th ed.), § 874; Sheldon, Subrogation, §§ 6, 45, 173; *Lamb v. Montague*, and *Ellsworth v. Lockwood, supra; Insurance Co. of North America v. Fidelity Title & Trust Co.*, 123 Pa. St. 523, 16 Atl. 791, 10 Am. St. 546; *Forest Oil Company's Appeals*, 118 Pa. St. 138, 12 Atl. 442, 4 Am. St. 584. The rights of the parties are determined as of the time of bringing the action. *Smith v. Woodleaf*, 21 Kan. 515; *Weeks v. Baker*, 152 Mass. 20, 24 N. E. 905; *Thomas v. Seattle Brew. & Malt. Co.*, 48 Wash. 560, 94 Pac. 116, 125 Am. St. 945, 15 L. R. A. (N. S.) 1164. The intervener is not within the terms of the statute allowing intervention. 11 Ency. Plead. & Prac., 502; *Des Moines Ins. Co. v. Lent*, 75 Iowa 522, 39 N. W. 826; *Braithwaite v. Akin*, 3 N. D. 365, 56 N. W. 133; *Continental Nat. Bank v. Weems*, 69 Tex. 489, 6 S. W. 802, 5 Am. St. 85. The statute regulates the tender, and even if made on law day, unless it is kept good, only stops interest or damages. *Landis v. Saxton*, 89 Mo. 375, 1 S. W. 359; *Knollenberg v. Nixon*, 171 Mo. 445, 72 S. W. 41, 94 Am. St. 790; *Hudson Bros. Commission v. Glencoe Sand & Gravel Co.*, 140 Mo. 103, 41 S. W. 450, 62 Am. St. 722; *Eaton v. Wells*, 82 N. Y. 576. The general rule is that tender after default, not kept good, does not impair the lien of the mortgage, but only stops interest. See cases above cited and *Himmelmann v. Fitzpatrick*, 50 Cal. 650; *Perre v. Castro*, 14 Cal. 519, 76 Am. Dec. 444; *Matthews v. Lindsay*, 20 Fla. 962; *Alexander v. Caldwell*, 61 Ala. 543; *Stockton v. Dundee Mfg. Co.*, 22 N. J. Eq. 56; *Shields v. Lozear*, 34 N. J. L. 496; *Currier v. Gale*, 91 Mass. 522; *Tishmingo Sav. Inst. v. Buchanan*, 60 Miss. 496; *Lincoln Sav. Bank v. Ewing*, 80 Tenn. 598; *Rowell v. Mitchell*, 68 Me. 21; *Smith v. Kelley*, 27 Me. 237, 46 Am. Dec. 595; *Brown v. Simons*, 45 N. H. 211; *Crain v. McGoon*, 86 Ill. 431, 29 Am. Rep. 37; *Parker v. Beasley*, 116 N. C. 1, 21 S. E. 955, 33 L. R. A. 231; *Greer v. Turner*, 36 Ark. 17. Tender after suit does not discharge the lien, unless paid into court.

*Bailey v. Metcalf*, 6 N. H. 156; *Robinson v. Leavitt*, 7 N. H. 73; *Snyder v. Quarton*, 47 Mich. 211, 10 N. W. 204; *Roberts v. White*, 146 Mass. 256, 15 N. E. 568; *Whiteman v. Perkins*, 56 Neb. 181, 76 N. W. 547; *Daughdrill v. Sweeney*, 41 Ala. 310; *Ireland v. Montgomery*, 34 Ind. 174; *Levan v. Sternfield*, 55 N. J. L. 41, 25 Atl. 854. The tender was bad because not made for the purpose of paying the debt. 28 Am. & Eng. Ency. Law (2d ed.), 4; Hunt, Tender, §§ 1, 239, 256; 1 Jones, Mortgages (6th ed.), § 900; *Glos v. Goodrich*, 175 Ill. 20, 51 N. E. 643; *Potts v. Plaisted*, 30 Mich. 148; *Proctor v. Robinson*, 35 Mich. 284. To destroy the lien of an incumbrance there must be an absolute tender that will discharge the debt. 27 Cyc. 1406; Hunt, Tender, § 256; *Frost v. Yonkers Savings Bank*, 70 N. Y. 553, 26 Am. Rep. 627; *Tuthill v. Morris*, 81 N. Y. 94; *Werner v. Tuch*, 127 N. Y. 217, 27 N. E. 845, 24 Am. St. 443; *Lumsden v. Manson*, 96 Me. 357, 52 Atl. 783. Averment of *tout temps prist* and payment into court is essential to a plea of tender that operates to discharge the debt. 1 Jones, Mortgages (6th ed.), § 893; *Giles v. Hartis,* 1 Raym. (K. B.) 254; *Hume v. Peploe*, 8 East 168; *Kortright v. Cady*, 21 N. Y. 343, 78 Am. Dec. 145. A tender for the purpose of assignment and subrogation is a conditional one that will not discharge the lien. See cases above cited and 1 Jones, Mortgages, § 900; 2 Jones, Mortgages, § 1088; 27 Cyc. 1406; *Post v. Springsted*, 49 Mich. 90, 13 N. W. 370; *Dodge v. Brewer*, 31 Mich. 227; *Waldron v. Murphy*, 40 Mich. 668; *Ivall v. Willis*, 17 Wash. 645, 50 Pac. 467; *Thomas v. Seattle Brewing & Malting Co.*, 48 Wash. 560, 94 Pac. 116, 125 Am. St. 945, 15 L. R. A. (N. S.) 1164; *Noyes v. Wyckoff*, 114 N. Y. 204, 21 N. E. 158; *Beardsley v. Beardsley*, 86 Fed. 16; *Lilienthal v. McCormick*, 117 Fed. 89; *Union Mut. Life Ins. Co. v. Union Mills Plaster Co.*, 37 Fed. 286; *Selby v. Hurd*, 51 Mich. 1, 16 N. W. 180; *Day v. Strong*, 29 Hun 505; *Storey v. Knewson*, 55 Ind. 397; *Loring v. Cooke*, 3 Pick. 48; *Wendell v. New Hamp-*

*shire Bank,* 9 N. H. 404; *Forest Oil Company's Appeals,*
118 Pa. St. 138, 12 Atl. 442, 4 Am. St. 584; *Sanford v.
Bulkley,* 30 Conn. 344. The evidence failed to show the
capacity of the intervener to sue; the certificate that articles
had been filed did not show its incorporation. *Spokane &
Idaho Lumber Co. v. Loy,* 21 Wash. 501, 58 Pac. 672, 60
Pac. 1119; *Evans & Riehl v. Labaddie,* 10 Mo. 425; *Smith
v. Rich,* 37 Mich. 549; 1 Greenleaf, Evidence, § 4398. The
intervener was not in a position to perform the contract by
tender and so discharge the lien, but only to redeem, which
must be by actual payment. Hunt, Tender, § 331; Jones,
Mortgages (6th ed.), § 895; *Harris v. Jex,* 66 Barb. 232;
*Noyes v. Wyckoff,* 114 N. Y. 204, 21 N. E. 158; *Gibson v.
Lyon,* 115 U. S. 439, 6 Sup. Ct. 129, 29 L. Ed. 440;
*Rowell v. Jewett,* 73 Me. 365. The administrator was the
only person qualified to make such a tender. 28 Am. & Eng.
Ency. Law, pp. 34, 35; Hunt, Tender, § 330. The tender
must be kept good. Hunt, Tender, § 349; 28 Am. & Eng.
Ency. Law (2d ed.), 20; 1 Jones, Mortgages (6th ed.),
§§ 891, 892, 893. At common law it could not be made after
law day. 28 Am. & Eng. Ency. Law, 21; Hunt, Tender,
§ 306; *Levan v. Sternfield, supra; Smith v. Woodleaf,* 21
Kan. 515; *Murray v. Windley,* 29 N. C. 201, 47 Am. Dec.
324; *Braumann v. Vanderpoel,* 26 Misc. (N. Y.) 786; *Cogh-
lan v. South Carolina R. Co.,* 32 Fed. 316. After action, ten-
der can only be made under a statute authorizing it. Bal.
Code, § 5177; Hunt, Tender, § 307; Wiltsie, Mortgage Fore-
closure, § 255; *Snyder v. Quarton, supra; Kelly v. West,*
36 N. Y. Super. Ct. 304; *Sweetland v. Tuthill,* 54 Ill. 215;
*Call v. Lothrop,* 39 Me. 434; *Astor v. Palache,* 49 How. Pr.
231; *Bartow v. Cleveland,* 16 How. Pr. 364; *Thurston v.
Marsh,* 14 How. Pr. 572; *New York Fire and Marine Ins.
Co. v. Burrell,* 9 How. Pr. 398.

*James B. Howe,* for respondent intervener, contended,
among other things, that the intervener was entitled, upon

paying the mortgage, to have the mortgage kept alive so as to secure repayment of half from its cotenants. Jones, Mortgages (4th ed.), p. 49, § 1089; Sheldon, Subrogation, § 173; 27 Am. & Eng. Ency. Law (2d ed.), pp. 227, 235; 27 Cycs. of Law and Procedure, p. 1436; Pomeroy, Equity (3d ed.), 792, 798, 799, 1112, 1211; Beach, Modern Equity Jurisprudence, §§ 802, 804; *Parsons v. Urie*, 104 Md. 238, 64 Atl. 927, 8 L. R. A. (N. S.) 559, 10 Am. & Eng. Ann. Cases, 280; *Ohmer v. Boyer*, 89 Ala. 273, 7 South. 663; *Pease v. Egan*, 131 N. Y. 262, 30 N. E. 102; *Hamilton v. Dobbs*, 19 N. J. Eq. 227; *Twombly v. Cassidy*, 82 N. Y. 155, 157; *Cole v. Malcolm*, 66 N. Y. 363; *Johnson v. Zink*, 51 N. Y. 333-337; *Kinkead v. Ryan*, 65 N. J. Eq. 726, 55 Atl. 730; *Weidner v. Thompson*, 69 Iowa 36, 28 N. W. 422; *Chase Nat. Bank of New York v. Hastings*, 20 Wash. 433, 55 Pac. 574; *Knoblauch v. Foglesong*, 37 Minn. 320, 33 N. W. 865. A person making a tender always has the right to state his position. *Greenwood v. Sutcliffe*, 1 Ch. Div. (L. R. 1892) 1; *Scott v. Uxbridge etc. R.*, 1 C. P. (L. R.) 596; *Halpin v. Phenix Co.*, 118 N. Y. 165, 23 N. E. 482; *Parsons v. Urie, supra*. It was not necessary to keep the tender good. *Moore v. Norman*, 43 Minn. 428, 45 N. W. 857, 19 Am. St. 247; *Kortright v. Cady*, 21 N. Y. 343, 78 Am. Dec. 145; *Moynahan v. Moore*, 9 Mich. 8; 22 Central Law Journal, pp. 389-392, par. 10. Having refused the payment, the mortgagee, by his own folly, lost his lien. *Mitchell v. Roberts*, 17 Fed. 776; *Moore v. Norman* and *Kortright v. Cady, supra*; *Helphrey v. Strobach*, 13 Wash. 128, 42 Pac. 537; *Thomas v. Seattle Brewing & Malting Co.*, 48 Wash. 560, 94 Pac. 116, 125 Am. St. 945, 15 L. R. A. (N. S.) 1164; *Andrews v. Hoeslich*, 47 Wash. 220, 91 Pac. 772, 18 L. R. A. (N. S.) 1273; *Lyon's Appeal*, 61 Pa. St. 15.

CHADWICK, J.—This appeal involves only matters in controversy between plaintiff and the Mercantile Investment

Company, intervener.   No reference will be made to other parties.

On the 22d day of April, 1897, one John Sullivan made, executed, and delivered, to the United States Mortgage & Trust Company of New York, a certain note for the sum of $75,000.   This note was secured by a mortgage of even date, covering lots 4 and 5, in the addition to the city of Seattle platted by Carson D. Boren and Arthur A. Denny.   On the 26th day of September, 1900, John Sullivan died in King county, and the defendant Terrence O'Brien was thereafter appointed administrator of his estate.   The estate being without present funds to meet the note and mortgage on the due date, the administrator, acting under the order and direction of the court, obtained an extension of the mortgage until the first day of May, 1907.   Further extensions were made, so that the note has been at all times a live demand and the mortgage a subsisting lien upon the property charged.   On the 30th day of April, 1906, the United States Mortgage & Trust Company, in consideration of the then present worth of the note and mortgage and a bonus of $500, assigned the securities to James A. Murray, the plaintiff, and he has been at all times since, and is now, the owner and holder thereof.   Sullivan in his lifetime had reduced the principal indebtedness in the sum of $15,000, so that on the 20th day of April, 1908, the date upon which this action was begun, there was due the principal sum of $60,000, with interest from April 1, and $1,500 being the interest from November 1, 1907, to April 1, 1908.   The latter amount was evidenced by a promissory note executed by the administrator under the order and direction of the court.   Plaintiff asked that the property be sold in accordance with the usual forms in such cases.

On March 23, 1909, the Mercantile Investment Company asked leave to intervene.   Its petition was granted by the court.   Its complaint in intervention sets up, among other things, that ever since the 5th day of December, 1908, it

has been, and is now, a corporation duly organized under
the laws of the state of Washington, and is authorized to
purchase, hold, acquire, sell, and dispose of real and personal
property.   After reciting the death of. Sullivan and the con-
sequent probate proceedings, the execution of the note and
mortgage, and plaintiff's claim to be the owner and holder
thereof, it is alleged that, ever since the 4th day of January,
1909, it has been the owner of an undivided interest in the
property, and that the other interest, being one-half there-
of, is owned by Corwin S. Shank and wife and Edward Cor-
coran and Charles P. O'Neill and wife; that plaintiff had
refused to grant an extension of time for the payment of the
note and mortgage, or to assign his securities without re-
course or otherwise; that it was ready, able, and willing to
take up the mortgage, and to pay to plaintiff the principal,
interest, costs, and attorney's fees; that the amount thereof
had been furnished by attorneys for plaintiff; that it was
willing to pay the same if the note and mortgage was as-
signed to it without recourse against plaintiff, or if, upon its
making such payment, it be subrogated to the rights of
plaintiff in the note and mortgage and in the foreclosure suit.
Intervener further alleged that its co-owners were unable to
pay the one-half of the amount then due, and that plaintiff,
with intent to embarrass and defeat the right of the inter-
vener, had threatened to dismiss his foreclosure suit and
satisfy the lien of his mortgage and the debt secured thereby,
if it paid the whole thereof.

On the 20th day of March, 1909, the intervener had begun
an independent action against plaintiff, setting up in sub-
stance the same matters which are recited in its petition for
intervention, and praying for an order enjoining and re-
straining plaintiff and his attorneys from satisfying the
mortgage or dismissing the foreclosure proceeding in the
event of payment by the intervener.   After formal proceed-
ings had, an order was made by the court, restraining plain-
tiff and his attorneys of record, and all other agents and

attorneys then employed or thereafter to be employed by him, from satisfying the note and mortgage and from dismissing the foreclosure suit in case a tender of the amount due was made by the· intervener, which the order recited it was about to do.   Accordingly, on the 25th day of March, 1909, the intervener tendered plaintiff's attorneys, at their office .in Seattle, the full sum of $68,654.67, being the full amount of principal, interest, costs, and attorney's fees then due upon the mortgage.   In this tender the intervener said:

"The Mercantile Investment Company has instituted suit against you in the superior court of the state of Washington for King county, and seeks to be subrogated to all of the rights of James A. Murray under the notes and mortgage mentioned in the above entitled suit, and also in the above entitled suit.   The Mercantile Investment Company has also intervened in the above entitled suit, and in its complaint in intervention also seeks to be subrogated to all of the rights of James A. Murray under such notes and mortgage and in the above entitled suit.   This tender is made for the purpose of protecting the title of the Mercantile Investment Company in the property described in your complaint in the foreclosure suit and to obtain subrogation by the Mercantile Investment Company to all of the rights of said James A. Murray."

Upon the written offer of tender, attorneys for plaintiff· indorsed over their signature the following:   "Said tender is refused for the reason that it is not made for the purpose of paying and discharging said mortgage."   Thereupon a tender was made, in all respects similar to the first, omitting only the last sentence.   This offer was. also acknowledged, and upon the writing the attorneys indorsed the following: "The above refused for the purpose set forth in the notice." A third notice of tender was then written out, in words and figures following:

"The Mercantile Investment Company now makes you a third tender of the amount mentioned in the previous tenders this day made, being the full amount of the notes and mortgage, principal, interest, costs and attorney's fees.   The Mercantile Investment Company is the owner of an undivided

half interest in the property described in the mortgage; is not personally liable for the amount or any part thereof, and now tenders you the above amount without any qualification, and requests you to accept such tender."

Upon this offer, the attorneys wrote over their signature the one word "Refused." Following these tenders, the intervener obtained leave to, and did, file an amended complaint in the intervention, in which, in addition to the allegations contained in its first complaint, it set up the several tenders to which we have alluded, and asked that, because of the refusal to accept them or any of them, the court enter a decree holding that the lien of plaintiff's mortgage be cancelled, and further, that the court decree the debt to be discharged, for the reason that there having been no formal presentation of the debt to the administrator of the Sullivan estate, the lien being lost, the debt was barred by the statute of nonclaim. Bal. Code, § 6228.

We have endeavored to epitomize the record so as to point out only the particular facts which moved the trial court to enter its decree in favor of the intervener. Appellant suggests a number of reasons why the decree of the court should not be sustained; among others, that the intervener is not entitled to intervene or to any standing as a party; that the facts set up by it are insufficient to state a cause for intervention; that being the owner of one-half of the property, it cannot make a valid tender; that no valid tender was made; that a tender made out of court during the pendency of an action does not discharge the lien of a mortgage, and that, in any event, the court erred in denying his right to recover the debt from the estate of John Sullivan.

The first several grounds upon which appellant stands are without merit. The pleadings and the proofs show that respondent has a valid and subsisting interest in the property, and its right to protect that interest in any manner or by any method sanctioned by the law cannot be questioned. The right of subrogation under the better rule applies in cases

where a party who has an interest in the property and who does not stand as a mere volunteer pays a debt owing in whole or in part by another, to protect his own rights or to save his own property.   The remedy is no longer limited to sureties and quasi sureties, but is freely applied by courts of equity in all cases where good conscience and equity dictate that a debt paid by one under any sort of legal coercion ought to be paid by another.  *Arnold v. Green*, 116 N. Y. 566, 23 N. E. 1; *Parsons v. Urie*, 10 Am. & Eng. Ann. Cases 280 [104 Md. 238, 64 Atl. 927, 8 L. R. A. (N. S.) 559]; Pomeroy, Equity Jurisp., §§ 798, 799; *In re Bruce*, 158 Fed. 123; Beach, Modern Equity, Jurisp., 802-804; *Twombly v. Cassidy*, 82 N. Y. 155; *Kinkead v. Ryan*, 65 N. J. Eq. 726, 55 Atl. 730.

In *Cottrell's Appeal*, 23 Penn. 294, the court said:

"Subrogation is founded on principles of equity and benevolence, and may be decreed where no contract or privity of any kind exists between the parties.   Wherever one not a mere volunteer discharges the debt of another, he is entitled to all the remedies which the creditor possessed against the debtor."

Chief Justice Marshall said, in *Lidderdale v. Robertson, Adm'r*, 159 Fed. Cases No. 8,337:

"When a purchaser has paid money for which others were responsible, the equitable claim which such payment gives him on those who were so responsible, shall be clothed with the legal garb with which the contract he has discharged was invested, and he shall be substituted, to every equitable intent and purpose, in the place of the creditor whose claim he has discharged."

Under these rules respondent had a right to invoke the aid of the court, and so long as appellant was not asked to take less than the burden of his bond, he cannot complain or question the procedure when the court is acting within its jurisdiction.   The interest creates the right, and puts in motion the maxim that a court of equity having acquired jurisdic-

tion of the property will do complete justice as between the
parties interested therein.

The reasons assigned by appellant for refusing the relief
sought by respondent are fanciful rather than real.    It is
hinted, rather than openly asserted, that it was manifest to
him that respondent was undertaking to gain an advantage
over its co-owners, and if he had met the demands of respond-
ent, under the orders of the court, some damage or prejudice
would have resulted to them.    Testimony is also cited show-
ing that the co-owners were willing to pay their share of the
debt.    It is enough to say that the law puts upon appellant
no duty to protect others.    Reason and experience alike
teach us that the courts may be relied upon to apply those
general rules of equity ample in all cases to protect the rights
of all who invoke them.    In this case there is nothing to in-
dicate any outrage upon, or attempted infringement of, the
rights of the co-owners ; certainly nothing that would warrant
the interposition of appellant in their behalf.    As for their
willingness to pay their share of the debt, the answer is that
there is nothing in the record to show that that privilege was,
or is now, denied them.

On the other hand, we think it was entirely unnecessary
for the respondent to approach an attempted settlement
of this case in the manner in which it did.    It might and
should have relied upon the court whose jurisdiction it had
also invoked.    Respondent might have paid the money into
court without the formal declarations of tender, and the
court would have been warranted in making such orders
as might be necessary for its protection.    A satisfaction
of the debt by appellant would not have killed the obli-
gation or worked a forfeiture of its rights.    The court had
jurisdiction of the property, with power to enter an order
recognizing the subrogation, for it is not created by the order,
but follows as the legal consequence of the acts of the parties.
*Look v. Horn*, 97 Me. 283, 54 Atl. 725; *Shaffer v. McClos-*

*key,* 101 Cal. 576, 36 Pac. 196; Pomeroy, Equity, 1211 *et seq.*; Pomeroy, Equitable Remedies, 921.

The point is also made that the pleadings and the tender show that they were made in behalf of another, or others who had been induced to loan the amount then due appellant, and might therefore be ignored for that reason. What we have already said disposes of this contention. Where, and upon what terms, respondent got the money to tender is of no concern to appellant. The law does not give him the right to reject an offer because he objects to the source from which the money comes. *Eslow v. Mitchell,* 26 Mich. 500.

Being of the opinion that the intervener has a right to maintain its standing in court, we now come to the main issue. The trial court was controlled in its judgment by the case of *Thomas v. Seattle Brewing & Malting Co.,* 48 Wash. 560, 94 Pac. 116, wherein the court held that a tender of the amount due on a mortgage on law day, which by construction has been extended to any time before suit brought, discharged the lien of the mortgage, and that having been so made, the tender need not be kept good by bringing the money into court. We are satisfied with that decision and, unless the contention of the appellant that action having been begun the lien of the mortgage cannot be discharged by a tender made out of court is well founded, the judgment of the lower court must be affirmed. In justice to the trial court we feel bound to say that the decree rendered by it is sustained by the leading case of *Kortright v. Cady,* 21 N. Y. 343, 78 Am. Dec. 145, and other cases upon which the *Thomas* case is made to rest. But a reexamination of that case, and of the other cases referred to in the *Thomas* decision, and those cited and relied upon by the respondent, convinces us that the reason for the rule ceases when an action is instituted to recover the debt, and that it should be given no application except in those cases where at common law a party was entitled to a discharge of a lien upon property by payment or tender of payment *inter partes,* before or upon law day.

From the first the courts have been fertile in their reasons for refusing to extend the doctrine here invoked to cases where questions other than the mere payment of money were involved.   In all the cases cited by respondent to sustain the judgment of the lower court, it appears that the primary purpose of the tender was to discharge the debt.   But in this case it was not entirely so.   In *Kortright v. Cady* the law was exhausted by the learned judge who wrote the opinion. It was there held that the law day of the common law should be held to be, considering the changed character of the mortgage, any day before foreclosure and sale.   Accepting the rule that the tender will be effectual to discharge the lien if made at any time before foreclosure, it becomes material to inquire the meaning of that term; whether it means the commencement of an action, or a final decree of foreclosure and sale.   Considering the reasons upon which the rule of discharge by tender rests; that is, that the law day continued after the due date of an obligation and until action brought, and that a lien can be defeated by a tender made within that time, it would seem to follow, as of course, that "foreclosure" and "law day" are synonymous terms, in the sense that it is a time when the mortgagor declares a default and submits his cause to a court of competent jurisdiction.   The word "foreclosure," as it is used in the authorities bearing on this question, must be taken in that meaning which is common and generally accepted by the laity as well as the bar; that is, the institution of a suit, or the "law day" as contradistinguished from the "law day" of the common law.   The logic of the decisions is that a lien should be discharged by tender only when made before action brought, and that thereafter it ought to be tendered in court or, if made after the writ has issued, it should be at least kept good by the plea *tout temps prist*.

In speaking of the subject of tender generally, it is said in *Coghlan v. South Carolina R. Co.*, 32 Fed. 316:

"But when an action has already been commenced and is pending, if the defendant be disposed to admit the demand in

part, it is not only necessary that he should offer to pay the amount admitted in the same way as the tender before suit should be made, but he must go further, and either pay the sum admitted into court, or, at the least, offer to submit to a judgment for that sum."

In the case of *Whittaker v. Belvidere Roller-Mill Co.*, 55 N. J. Eq. 674, 38 Atl. 289, a case somewhat similar to the one at bar, it was held that, when a tender is made after suit is begun and is then urged as a defense, the money must be paid into court. In *Weeks v. Baker*, 152 Mass. 20, from which quotation is made in the *Thomas* case, the court said: "The rights of a party to an action are ordinarily to be determined as of the time of bringing the suit." We make this distinction between the case of *Kortright v. Cady* and the rule as we believe it should be. The logic of the *Kortright* case is that the law day continued from the due date of the obligation to the final decree of foreclosure and sale; whereas we hold that the law day within which a lien may be discharged by tender *inter partes*, continues only to the time of the issuance of the writ or, under the code practice, until the commencement of the action.

Because of the unusual importance of this case we feel warranted in going further and calling attention to another limitation upon the rights of a mortgagor, or one claiming under him, to discharge the lien of a mortgage by the tender of the mortgage debt. Although the rule as contended for was originally declared in New York, it has been repeatedly held, even in that state, that it will not avail one who is seeking affirmative relief. *Tuthill v. Morris*, 81 N. Y. 94; *Becker v. Boon*, 61 N. Y. 317; *Halpin v. Phenix Ins. Co.*, 118 N. Y. 165, 23 N. E. 482. Also, *Landis v. Saxton*, 89 Mo. 375, 1 S. W. 359. While we cannot indorse all of the reasons upon which some of the foregoing cases are made to rest, they are pertinent at least to show the disposition of the courts to evade the full rigor of the rule as laid down in the *Kortright* case.

Counsel for the respondent rightfully contends that his last
tender cannot be measured by the two qualified or conditional
tenders immediately preceding it, but the law day having
been declared by the institution of the action to foreclose the
mortgage in which respondent had appeared as a party, its
tender can, and should in the interest of that equity which
shuns the suggestion of a forfeiture, be measured by the
prayer of its complaint in the independent action as well as
the original petition for intervention. When so considered, it
requires no far reach of the imagination to say that it was
made in aid of the affirmative relief there sought, and as a
basis for the filing of the amended petition in intervention in
which a cancellation of the debt was asked and obtained by
order of the court. In other words, respondent now asks that,
since the substance (the mortgage) has been annihilated, the
cloud (the record and the debt) which overshadows the title
be removed. It seeks to turn a shield of defense into a weapon
of offense. We feel sure that no cases will be found which
carry the rule of tender and discharge of a mortgage lien to
this extent. It is not equity. Orderly procedure, as well as
the assurance that the rights of litigants will be protected to
their fullest extent, alike require that those who submit their
causes to the courts should not go beyond the forum to estab-
lish their own case or to destroy that of their adversary.

It does not follow from what we have said in this opinion
that respondent did not have the right to tender the amount of
the debt, and thereby secure such other advantages as may
come to it under the accepted rules of law and equity. While
at law the rule that a tender must be kept good by payment
in court is well-nigh universal, it is not so in equity. A will-
ingness to pay may be sufficient. Bal. Code, §§ 5176 and
5177, provides that money may be paid into court and thus
arrest interest and costs. But independent of these statutes,
courts will apply the rules of equity when it is necessary to
do equal justice between the parties. In the following cases
the equities were such that the benefit of a tender was not lost

by a failure to pay the amount in court. *Whelan v. Reilly,* 61 Mo. 565; *Parker v. Beasley,* 116 N. C. 1, 21 S. E. 955, 33 L. R. A. 231; *Hill v. Carter,* 101 Mich. 158, 59 N. W. 413; *Mankel v. Belscamper,* 84 Wis. 218, 54 N. W. 500.

Appellant is here seeking equity. He must do equity. Remembering that respondent has gone into court averring its willingness to pay all that was due appellant, which was followed by an unconditional tender and appellant's unwarranted refusal to accept it, apparently hoping to gain some personal advantage over respondent, it would seem that in equity he should not claim anything for the use of the money. The law of tender is as much for the benefit of the creditor as the debtor. The creditor cannot refuse a tender believing it to be to his advantage to do so, and thereafter insist in equity that an unqualified tender has not been made good. Under such conditions, willingness to pay is all that the law requires. The plea of willingness being in the record, we hold that appellant is estopped to claim interest from the date of the tender. In the case of *Cheney v. Bilby,* 74 Fed. 52, where similar equities were involved, and many relevant cases are cited, Judge Caldwell said:

"Upon the soundest principles of equity and fair dealing, Cheney is estopped, on the facts of this case, from claiming interest on the notes after tender of payment. . . When he refused payment of the principal of the notes, and, in the hope of winning a great stake, asserted a conscienceless forfeiture, which he could not maintain, even in a court of law, he put the interest on the money tendered to the hazard. He chanced it, and lost."

The case is reversed, with instructions to the lower court to enter a judgment and decree of foreclosure for the sum of $68,654.67, unless such sum be theretofore paid by respondent to appellant, in which event the court will make such order as will protect the equities of all parties to the suit.

RUDKIN, C. J., and GOSE, J., concur.

FULLERTON, J., concurs in the result.

MORRIS, J. (concurring)—John Sullivan, who made the note and executed the mortgage in controversy, is dead. Such note was never presented as a claim against his estate, and is now barred by the statute. There is none against whom this debt can be enforced as a personal, binding obligation. So that to hold with the court below means a decree of a court of equity wiping out an indebtedness of nearly $70,000, upon an interpretation of the law which heretofore, so far as I have been able to gather from the books, has been applied only to the extent of destroying the lien of the security, but leaving the debt remaining as an enforceable obligation. Tender has never been held to be payment, yet to hold with respondent here means to so construe tender, as applied to mortgages, to make it in effect payment. I can find neither equity nor good conscience in such a rule. If, as in the cases cited in support of respondent's position, the debt still remained and could be enforced as a personal obligation, so that the creditor would not lose his right to seek the payment of his debt, either in this proceeding or in a separate action at law, and the only effect of the tender and its refusal was to destroy the lien given as security for the payment of the debt, I could readily subscribe to the doctrine of *Kortright v. Cady.* In such a case the rule there announced is an equitable one, its logic irresistible, its law uncontrovertible; it is the only result of premises always admitted to be true; that the mortgagor has the same right after as before a default to pay his debt and relieve his land from an incumbrance; and that payment being actually made, the lien thereby becomes extinct. Based upon these two legal principles, Comstock, C. J., in his opinion in the *Kortright* case, adds:

"We have, then, only to apply an admitted principle in the law of tender, which is, that tender is equivalent to payment as to all things which are incidental and accessorial to the debt. The creditor, by refusing to accept, does not forfeit his right to the very thing tendered, but he does lose all collateral benefits or securities."

Davies, J., in his opinion in the same case reasons it out that:

"It has never occurred to any judge to argue that a pawnee was in great peril, and in danger of losing the benefit of his pawn, by the enforcement of the well settled rule, that a tender of the amount of the loan and interest, and refusal, extinguished the lien on the pawn. Littleton well says, that it shall be accounted a man's own folly that he refused the money when a lawful tender of it was made to him. The only effect upon the rights of the mortgagee is, that the land or thing pledged is released from the lien, but the debt remaineth."

The reason of the rule, then, as given in *Kortright v. Cady*, is that it is only the incidental, the accessorial, thing that is lost by the refusal to accept the tender; not that there was danger "of losing the benefit of the pawn," but only the lien on the pawn. While if we apply the rule here, not only the incidental and accessorial thing is extinguished, but the thing itself is in effect extinguished. Not only the lien on the pawn is lost, but the danger, which "it has never occurred to any judge to argue," has come to the appellant; he has not only found himself in peril of loss, but he has lost the "benefit of his pawn." What, then, was intended as an equitable rule and one of good conscience, would, if extended to cases where not only the security but the debt itself was lost, become a most inequitable rule and one of oppression. I am willing to subscribe to the rule, then, in cases where the debt remains and can still be enforced as a personal obligation. I am not willing to subscribe to it where the personal obligation of the debt has been lost and the tender would take effect, not only as destroying the lien, but as likewise destroying all claim and right of the creditor to the debt itself.

This has appeared to me to be the equitable solution of the rule, and for these reasons I concur in the result.