[No. 11149.   Department One.   July 16, 1913.]

JOHN RUUTH *et al.*, *Appellants*, v. MORSE HARDWARE
COMPANY, *Respondent.*[1]

FRAUDULENT CONVEYANCES—DEED FROM HUSBAND TO WIFE—RIGHTS
OF CREDITORS—SUBSEQUENT PURCHASER. A conveyance by husband to
wife of community property without a valuable consideration, after
contracting a community debt, is constructively fraudulent as to the
community creditor.

JUDGMENTS—LIEN—COMMUNITY DEBT—HUSBAND AND WIFE. Where
one of the parties jointly interested in the purchase of land quit-
claimed to his wife in fraud of creditors before acquiring title, title
acquired jointly, after judgment against him, meets the lien of the
judgment, and one of his partners thereafter taking a warranty
deed from him and his wife is not an innocent purchaser, where he
knew his relation to the property, and at his instance advanced his
share of the purchase price for the final payment.

SUBROGATION—RIGHT TO PAYMENT—BY JOINT PURCHASER. One of
the joint purchasers of land, who advanced the sum necessary to
make final payment, after judgment lien against one of the other
vendees who was unable to pay his share, is entitled to be subro-
gated to the extent of such advances; as he is not a mere volunteer.

APPEAL—REVIEW—PLEADING—AMENDMENT TO CONFORM TO PROOF.
In an action to quiet title to land, evidence admitted without objec-
tion showing that the plaintiff was entitled to be subrogated to the
extent of advances made by him for the benefit of his grantor, en-
titled him to an amendment of the pleadings to conform to the proof,
which the supreme court on appeal will deem to have been made.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered January 28, 1913, dismissing
an action to quiet title, after a trial on the merits. Modified.

*Tucker & Hyland*, for appellants.

*Wm. Parmerlee* and *Pope Higgins*, for respondent.

GOSE, J.—This is a bill in equity to quiet the title to real
estate situated in the city of Seattle. The defendants pleaded
title acquired at a sale upon an execution issued upon an or-

[1]Reported in 133 Pac. 587.

dinary money judgment. A decree was entered in favor of the defendant, from which the plaintiffs appeal. The stipulated facts are as follows:

On the 1st day of October, 1906, the Grand Boulevard Improvement Company, a corporation, being the owner of lots 19 to 25 inclusive, in block three, Buena Vista addition to the city of Seattle, entered into a written contract whereby it agreed to sell these lots to the appellant John Ruuth, and F. W. Ladd and George H. Gerrish, in consideration of the payment by them of $4,000. Ruuth, Ladd and Gerrish paid $800 at the time the contract was made, and agreed to pay the remainder in installments of $800 each upon fixed dates. Time was expressly made of the essence of the contract. The contract provided that it should not be sold, assigned or transferred by the vendees. Final payment was made on the 2d day of May, 1910, and the vendor then conveyed the lots to the vendees, each of whom took an undivided one-third interest in the property. On the 2d day of December, 1908, F. W. Ladd, in consideration of one dollar, gave a quitclaim deed to the lots to his wife, Idella Ladd, which deed was filed for record on the following day. On the 3d day of May, 1910, F. W. Ladd and his wife Idella conveyed by warranty deed lots 19 and 20, of the lots first described, to the appellant John Ruuth, which deed was recorded on the 27th day of May. On the 30th day of July, 1908, F. W. Ladd and one Hall, as copartners contracted a debt with the respondent. On the 7th day of November, following, the respondent brought suit against F. W. Ladd upon that account. A judgment was entered therein on the 4th day of December, 1908, in favor of the respondent and against F. W. Ladd. On the 10th day of May, 1911, an execution was issued upon the judgment and the lots in controversy were levied upon, and on the 24th day of June following, the lots were sold to the respondent at this execution sale. On the 11th day of July, 1912, the sheriff regularly executed a deed to the purchaser. During all of

these times F. W. Ladd and Idella Ladd were husband and wife.

It will be remembered that the contract of purchase was made in October, 1906; that Ladd, in consideration of one dollar, quitclaimed to his wife on the 2d day of December, 1908; that the deed was filed for record the next day; that the judgment was entered two days later; that final payment was made on the contract and the property was conveyed to the vendees on the 2d day of May, 1910; and that, on the following day, Ladd and wife attempted to convey the lots in controversy to the appellant John Ruuth, by a deed of warranty.

The appellant John Ruuth testified that he purchased from the Ladds without an abstract of title; that he did not have the title examined; that he had no actual notice of the judgment; that he had made all the payments on the contract; that F. W. Ladd had repaid him in each instance except as to the final payment; that he made the final payment for Ladd upon the lots; that, in consideration of $433.33 of the amount then advanced by him, the Ladds conveyed to him their undivided one-third of the two lots in controversy; and that they gave to him their joint note for the excess.

Upon these facts, it is obvious that the debt of Hall and Ladd was a community debt of the Ladds, and that the conveyance of Mr. Ladd to his wife was made without a valuable consideration after the debt had been contracted. The conveyance was constructively fraudulent as against the respondent.

The appellants contend, however, that they acquired the property without either actual or constructive notice of the judgment lien, and that they are innocent purchasers. In support of this view, they cite *Clerf v. Montgomery*, 15 Wash. 483, 46 Pac. 1028, 48 Pac. 733; *Anders v. Bouska*, 61 Wash. 393, 112 Pac. 523; and *Sawtelle v. Weymouth*, 14 Wash. 21, 43 Pac. 1101. In the *Clerf* case, the husband conveyed the legal title to the premises to his wife. Thereafter, Clerf, whose

claim antedated the deed to the wife, attached the property. Subsequent to the filing of the writ of attachment in the office of the county auditor, the wife sold and conveyed the property for a valuable consideration. Five days later, Clerf obtained a judgment in the attachment suit against the husband. The trial court found that the conveyance to the wife was made with intent to defraud the creditors of the husband. The purpose of the suit was to set aside the deed to the wife as fraudulent. It was held that "the record title" was in the wife, and that the writ of attachment sued out against the husband only did not give constructive notice to the purchaser; that he had no actual notice; and that he was a *bona fide* purchaser. In the *Sawtelle* case the same rule was applied. There the husband had conveyed the legal title to the wife before the judgment had been entered against him, and she had conveyed it to the purchasers for value after the entry of the judgment. The *Anders* case announces a like principle.

It will be observed that, in each of these cases, the wife held the record legal title before there was any attempt upon the part of the creditor to obtain an involuntary lien against the property, and that in each instance the suit was against the husband only.

The principle announced in these cases is not controlling, for two reasons: (a) The appellant husband dealt exclusively with F. W. Ladd, knew his relation to the original contract for the purchase of the property, and advanced the consideration for the final payment at his instance; and (b) when Ladd attempted to convey to his wife, he had no title. When the title was later acquired, it met the judgment lien, and was subject to it.

The appellants next contend that, having paid to the common grantor $433.33 of the purchase price for the benefit of the Ladds, upon a joint contract, where there was no severalty of interest, the payment being necessary for the protection of their own interest in the property and a prerequisite to the acquisition of title, in equity and good con-

science they should be subrogated to the rights of the vendor, to the extent of such payment, and legal interest from the date of the payment; and that it should be decreed a lien upon the respondent's undivided one-third interest in the property. As sustaining authority, they rely upon *Murray v. O'Brien*, 56 Wash. 361, 105 Pac. 840, 28 L. R. A. (N. S.) 998; *Cole v. Malcolm*, 66 N. Y. 363; and *Arnold v. Green*, 116 N. Y. 566, 23 N. E. 1. In the *Murray* case, in discussing the doctrine of subrogation, we said:

"The right of subrogation under the better rule applies in cases where a party who has an interest in the property and who does not stand as a mere volunteer pays a debt owing in whole or in part by another, to protect his own rights or to save his own property. The remedy is no longer limited to sureties and quasi sureties, but is freely applied by courts of equity in all cases where good conscience and equity dictate that a debt paid by one under any sort of legal coercion ought to be paid by another."

In *Cole v. Malcolm*, the principle of subrogation is thus stated:

"It is generally and most frequently applied in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is only secondarily liable for the debt; but it is also applicable to cases where a party is compelled to pay the debt of a third person to protect his own rights, or to save his own property."

*Arnold v. Green*, announces the broad principle that one who pays the debt of another to avoid losing his property is not a stranger or volunteer, but that he may be protected by the equitable doctrine of subrogation. In the case at bar, the parties were joint purchasers. Each was liable for the payment of the full purchase price. Payments had been made upon the property before the final payment, and time was made the essence of the contract. Ladd could not meet his last payment, and the appellant husband, at his request, advanced the money for him direct to the vendor. The principles of equity will not permit the respondent to reap the

benefit of this payment. The vendor held the legal title as security for the payment of the purchase price, and the appellants ought to be subrogated to that right. They were in no sense volunteers, but on the contrary they were compelled to advance the money to protect their interest in the property.

The respondent, among other cases, has cited *Asher v. Sekofsky*, 10 Wash. 379, 38 Pac. 1133; *Morris v. White*, 36 N. J. Eq. 324; *Downer v. Wilson*, 33 Vt. 1; and *Banta v. Garmo*, 1 Sandf. Ch. 383. It was held in the *Asher* case that "one who merely lends money to pay purchase money is not subrogated to the vendor's lien." The distinction between the payment of a debt by a volunteer and by one who makes a payment for another to protect his own property interest is recognized in *Morris v. White*, where the court said:

"The doctrine of subrogation is not applied to the mere stranger or volunteer who has paid the debt of another, without any assignment or agreement for subrogation, without any legal obligation to make the payment, and without being compelled to do so for the preservation of any rights or property of his own."

*Downer v. Wilson* and *Banta v. Garmo* recognize this distinction. The respondent has cited no authority where, at the time the money was advanced to pay an incumbrance, the party advancing it had an interest in the incumbered property to protect.

The appellants filed an amended reply setting forth the advancement of Ladd's portion of the last payment to the common grantor to complete the purchase. The prayer was either for judgment as prayed for in the complaint, or for subrogation to the extent of $433.33. The testimony was all admitted without objection after the following statement of counsel for the respondent:

"Mr. Parmerlee: It has been agreed by counsel that the answer might be amended in a couple of respects and that it be denied by the plaintiffs; and the plaintiffs also desire to amend their reply by adding a part to it. There will be no

objections to that as to time, but there will be an argument as to the sufficiency of it at the close of the case."

The respondent contends that the matter set forth in the amended reply is a departure from the cause of action pleaded in the complaint, and that the scope of the complaint may not be enlarged by the reply. This may be conceded, but the argument does not meet the situation. The appellants were privileged to plead all the facts in their bill, and to pray for general equitable relief. This would have entitled them to subrogation. When the evidence had been submitted without objection, the court should have treated the bill as amended to meet the issues as actually made in the trial, or should have directed an amendment of the bill to conform to the case as it then stood. Instead of doing this, the court entered a decree quieting title in the respondent in harmony with the prayer in its answer, and provided in the decree that the question of the right of the appellants to subrogation was not adjudicated "for the reason that said question of subrogation could not be considered by the court in the trial of the case on account of it not having been properly pleaded." There is no need of further litigation to determine the appellants' right to subrogation. The facts are before us for a trial *de novo*, and they are either admitted or undisputed.

The case will be remanded with directions to modify the decree so as to give the appellants a lien upon the property described in the complaint for $433.33, with legal interest from May 2, 1910, the date it was paid. The appellants will recover their costs.

Chadwick, Mount, and Parker, JJ., concur.