SKOPIL, Circuit Judge:
OVERVIEW
The Bialac family sold Arizona real estate to Harsh Building Co. (“HBC”), a subsidiary of appellee, Harsh Investment Co. (“HIC”) in return for a “surplus cash” note (“note”) payable by HBC. From a default in a related transaction, HIC obtained a state court judgment against five members of ■ the Bialac family, jointly and severally. The judgment also gave HIC a security 7 interest in the note. Debtor-appellant James Bialac (“James”) is liable on HIC’s judgment and owns a one-sixth interest in the note.
HIC gave notice that it intended to foreclose on the note. James filed his Chapter 11 bankruptcy petition. HIC proceeded with the sale of the note. A five-sixth interest in the note was sold, with James’ one-sixth ownership interest preserved.
James sought to have the sale set aside. HIC sought to have the automatic stay, 11 U.S.C. § 362, lifted as to James’ one-sixth interest in the note. The bankruptcy court, 16 B.R. 982, continued the automatic stay *428 and held that the sale violated the stay. The Bankruptcy Appellate Panel (“BAP”), 24 B.R. 580, reversed both rulings. James Bialac appeals.
FACTS AND PROCEEDINGS BELOW[1]
In 1965, five members of the Bialac family sold a large Phoenix apartment project and adjacent shopping center to HBC, a subsidiary of HIC. The method by which HBC was to pay for its purchase became entangled in government regulations and protracted litigation between the parties.[2] The Arizona state courts held that the only enforceable method of payment was a “surplus cash note” in the principal amount of $1,989,800, at 7% interest, payable by the maker HBC, with the entire principal and interest due and payable on July 1, 2007.[3]
In a related transaction, HIC made a loan to the Bialacs. After these related 1965 transactions, a dispute arose. The Bialacs made no payments on their loan from HIC, and HBC made no interest payments on their note to the Bialacs.
HIC obtained a state court judgment against five members of the Bialac family, jointly and severally, in the principal sum of $436,455, plus 6% interest from 1965 and attorney fees. In addition, the judgment gave HIC a security interest in the note between its subsidiary, HBC and the Bialacs. HIC’s judgment was subsequently reduced by a $300,000 cash payment and a partial assignment to HBC. Because of accruing interest the judgment amounted to approximately $450,000 as of May 1981.
On May 22, 1981 HIC gave notice of its intention to foreclose on the surplus cash note it held as collateral for the $450,000 remaining due on its judgment. Prior to the sale, James Bialac filed his Chapter 11 petition in the United States Bankruptcy Court for the District of Arizona. HIC was notified of the filing.
HIC proceeded with the sale, not of the entire note, but of a five-sixth interest in it. James Bialac’s one-sixth interest was preserved. HIC was the only bidder, and purchased the five-sixth interest in the note for a credit bid of $160,000. That credit was applied to HIC’s judgment against the Bialac family, leaving a deficiency of approximately $300,000.
James sought to have HIC’s foreclosure sale set aside by the bankruptcy court. Count One of his complaint alleged that the foreclosure sale was not adequately noticed and was not conducted in a commercially reasonable manner. Count Two alleged that the automatic stay of 11 U.S.C. § 362 was violated by the sale of the note, which terminated James Bialac’s rights of redemption in the five-sixth portion of the note sold.
HIC counterclaimed, seeking to lift the stay as to James Bialac’s remaining one-sixth interest in the note to enable it to foreclose on that as well.
The bankruptcy court held that the sale was conducted in a commercially reasonable manner and that notice of the sale was satisfactory.[4] The court then held the sale of the five-sixth interest in the note violated the automatic stay of section 362. James Bialac’s undivided one-sixth interest *429 gave him a pre-foreclosure right to redeem the entire note by paying the amount of the judgment. The court held this redemption right was a valuable property right, entitled to the automatic stay provisions of section 362.
Finally, the bankruptcy court considered HIC’s counterclaim seeking to lift the stay with respect to James’ one-sixth interest in the note. A creditor is entitled to have the stay lifted providing (1) the debtor does not have an equity in the property; and (2) the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). The court found that the value of the note was not, at the time, quantifiable. It could not be determined whether James had any equity in the note. A separate action was proceeding. Final judgment in that action was necessary to determine the present value of the note, and whether James had any equity in it. The court felt it improper to lift the stay where the “side” litigation could establish an equity in the note. In addition, the court found the note necessary to an effective reorganization. The court refused to lift the stay.
The bankruptcy court voided the sale and reinstated James’ pre-foreclosure right to redeem the entire note. The right was qualified. James was only given sixty days within which to pay the $460,000 due under the judgment. If he failed to exercise his right to redeem, his right would be terminated and the foreclosure sale of the surplus cash note would be reinstated.
HIC immediately sought a stay of the bankruptcy court’s order. James Bialac stood ready to redeem the note from the judgment, but HIC would not accept. HIC sought a stay from the order so that it would not be compelled to accept. The stay was granted, and HIC appealed to the Bankruptcy Appellate Panel of the Ninth Circuit.
The BAP reversed and remanded. With respect to James’ redemption right in the five-sixth portion of the note sold, the BAP held that such rights, though valuable property rights, do not qualify for protection under the automatic stay provisions of section 362. As to HIC’s counterclaim, the BAP held that the trial court did not make findings sufficient to sustain its judgment that the automatic stay should continue as to the one-sixth interest in the note. The case was remanded for further findings on James Bialac’s equity in the note.
James Bialac appeals.
ISSUES
1. Was James Bialac’s pre-foreclosure right to redeem the entire note a property right entitled to the protection of 11 U.S.C. § 362?
2. Was HIC entitled to have the stay lifted as to James Bialac’s one-sixth interest in the note because he lacks equity in it and it is unnecessary to his Chapter 11 reorganization?
STANDARD OF REVIEW
This court is in as good a position as the BAP to review the findings of the bankruptcy court. Cf. Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101 (3d Cir.1981). Accordingly, this court applies the “clearly erroneous standard in reviewing the bankruptcy court’s findings. In re Visiting Home Services, Inc., 643 F.2d 1356,1359 (9th Cir.1981); cf. Universal Minerals, 669 F.2d at 102. Conclusions of law are subject to de novo review. In re Visiting Home Services, Inc., 643 F.2d at 1359.
DISCUSSION
1. Section 362 and Redemption Rights.
A three part analysis was required to determine if the sale of five-sixth of the note violated the automatic stay. First, the bankruptcy court had to determine if James Bialac had a right to redeem the entire note prior to the sale even though he only owned a one-sixth interest. If such a right existed, it had to determine whether the right is “property of the estate” as defined in the Bankruptcy Code, 11 U.S.C. § 541. Finally, afJ r finding that the right to redeem was “property of the estate,” it was necessary for the court to determine if the property *430 was altered in a manner contrary to the relevant provisions of 11 U.S.C. § 362(a) by the sale of five-sixth of the surplus cash note. The bankruptcy court decided that it did.
(a) Redemption right.
A debtor’s right to redeem collateral in Arizona is governed by A.R.S. § 44-3152 which provides:
At any time before the secured party has disposed of collateral ... the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition....
Both the bankruptcy court and the BAP interpreted this statute to give James Bialac a pre-foreclosure right to redeem the entire note. HIC argues that James has a right only to redeem his one-sixth interest by paying the one-sixth of the debt secured by that interest. HIC maintains that the individual joint and several debtors did not have a right to redeem the entire note by payment of the entire obligation.
While HIC argues there is no right to redeem the entire collateral, it also acknowledges in its brief to this court that “[b]y paying of HIC’s entire judgment debt before his Chapter 11, James Bialac would have acquired a right of contribution from his co-debtors. If he had acquired such a right, ... he could also have acquired an equitable lien against his co-debtors’ property to secure that right.” This acknowledgement is inconsistent with HIC’s arguments that no party has a pre-foreclosure right to redeem the entire property, and borders on being a concession of the issue.
We are unable to locate any case addressing the issue presented. A plain sense reading of the statute supports James. Section 44-3152 gives redemption rights to “debtors.” James is jointly and severally liable on the entire judgment secured by the note. He is a debtor for purposes of section 44-3152, as defined in section 44-3105(4). Redemption can be had only by satisfying “all” obligations, which clearly implicates the obligations of co-debtors. The only time a debtor does not have redemption rights is when the debtor and the owner of the property are not the same person, in which case the owner has the right to redeem. See A.R.S. 44-3105(4). Here, James is a debtor, as well as an owner for his interest in the note securing the debt is an undivided one-sixth. Moreover, in common law individual co-debtors are entitled to redeem the whole property. See, e.g., Murray v. O’Brien, 56 Wash. 61, 105 P. 840 (1909); Connell v. Welch, 101 Wis. 8, 76 N.W. 596 (1898). We find no intent on the part of the drafters of the Uniform Commercial Code to disturb the pre-existing rule.
We conclude that James had a pre-foreclosure redemption right which covered the entire note.
(b) Redemption rights as “property of the estate”.
Both the Bankruptcy Court and the BAP concluded that Bialac’s pre-foreclosure right to redeem the entire note was an independent property right that became part of the bankruptcy estate under 11 U.S.C. § 541. Section 541 defines property of the debtor which is to be considered part of the bankruptcy estate, and was intended to be broad and all-inclusive:
[T]he estate is comprised of all legal or equitable interest [sic] of the debtor in property, wherever located, as of the commencement of the case. The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, ... causes of action. ...
[T]his paragraph will include choses in action and claims by the debtor against others....
Notes of Committee on the Judiciary, S.Rep. No. 95-989, 95th Cong., 1st Sess. (1978), U.S.Code Cong. & Admin.News 1978, p. 5787 (notes following 11 U.S.C: § 541).
*431 HIC argues that the redemption right, if any, is merely an opportunity, which in this case went unexercised. Yet the courts have consistently said that options or contingent interests are property of the bankruptcy estate under section 541. “The term ‘property’ has been construed most generously and an interest is not outside its reach because it is novel or contingent or enjoyment must be postponed.” Segal v. Rochelle, 382 U.S. 375,379, 86 S.Ct. 511, 515,15 L.Ed.2d 428 (1966); In re Dunn, 5 B.R. 156, 159 (Bkrtcy.N.D.Tex.1980). Accord, Palmer v. Travelers Ins. Co., 319 F.2d 296 (5th Cir.1963).
The legislative history of Section 541 leaves no doubt that the definition was intended to be as broad as the language indicates ... ‘[Sjection 541(a) is an all-embracing definition which includes charges on property, such as liens held by the debtor on property of a third party, or beneficial rights and interest, that the debtor may have in property of another.’ 124 Cong.Rec. H 11,096 (Sept. 28, 1978) (Statement of Rep. Edwards)....
In re Adana Mortg. Bankers, Inc., 12 B.R. 989, 1002 (Bkrtcy.N.D.Ga.1980), appeal dismissed, 687 F.2d 344 (11th Cir.1982).
We hold that a pre-foreclosure right to redeem is a property right under section 541 whether it stems from ownership of the entire underlying property or only a fractional share.
(c) Section 362(a) automatic stay.
The applicability of section 362 to pre-foreclosure redemption rights is the heart of this case. Section 362(a) “operates as a stay, applicable to all entities, of—
(3) any act to obtain possession of property of the estate or of property from the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate;
(5) any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien serves a claim that arose before the commencement of the case under this title....
The scopé of the automatic stay is undeniably broad.
The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions ... The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor’s property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.
H.R.Rep. No. 95-595,95th Cong., 2d Sess. at 340 (1977), U.S.Code Cong. & Admin.News, 1978, at 6296.
A literal reading of the statute suggests that only actions directed at property of the estate are stayed. The foreclosure here was directed at property of James Bialac’s co-debtors. His property interests, the redemption right and the one-sixth ownership were only incidentally affected. That does not bring the transaction within the literal meaning of section 362.
This conclusion is buttressed by case law which makes clear that, apart from the effect caused by the existence of the redemption right, the automatic stay does not preclude efforts to collect from a bankrupt’s guarantors or from their property. E.g, In re Casgul of Nevada, Inc., 22 B.R. 65 (Bkrtcy. 9th Cir.1982); Globe Construction Co. v. Oklahoma City Housing Authority, 571 F.2d 1140 (10th Cir.1978), cert. denied, 439 U.S. 835, 99 S.Ct. 117, 58 L.Ed.2d 131 (1979).
But these cases involve no property of the debtor. For example, in Casgul, the bankrupt corporation’s debts were secured by the personal property of individual officers and directors of the corporation. When a creditor bank moved to foreclose on the *432 property held as security, the debtor corporation objected. The BAP held that, where the debtor has no interest in the property, section 362 offers no protection. Casgul, 22 B.R. at 66.
The instant case is distinguishable, in that here two aspects of the bankrupt’s property are implicated. First, and primarily, James Bialac had a one-sixth undivided interest in the note. While the sale attempted to preserve this interest, it would be more consistent with the best interests of the debtor and all creditors if the division of property in which the debtor has a fractional interest is under the auspices of the trustee in bankruptcy. Second, the redemption right was entirely cut off. Where prior to the foreclosure James could have paid $450,000 for a lien against the entire note, he now must pay $300,000 to protect just his one-sixth interest in it.
Neither of these interests are within protections afforded by a literal interpretation of section 362, yet they should be protected by the stay if the purposes of the Act, the orderly disposition of all property in which the debtor has some interest, are to be achieved. See Texaco, Inc. v. Liberty National Bank and Trust Co. of Oklahoma City, 464 F.2d 389, 392-93 (10th Cir.1972). Section 362 should be given a broad meaning to include the kind of property involved in this case. The BAP’s stated reason for cutting off the protections of section 362 in this case was because the line has to be drawn somewhere. While that of course is true, the line should not be drawn where it might frustrate the purposes of the Act.
2. Lifting the Section 362 Stay.
The bankruptcy court denied HIC’s request that the stay be lifted as to James’ one-sixth interest in the note. The BAP found that the bankruptcy court had not made sufficient factual findings to sustain its conclusion that the stay should be maintained, and remanded the case for further findings. We disagree.
A creditor is entitled to have a section 362 stay lifted if it can show that the debtor does not have an equity in such property and such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).
It is agreed by everyone that James has no equity in the note if its present value does not exceed the amount of HIC’s secured interest in it. The present value is subject to dispute. That determination depends on an interpretation of the note’s terms. The interpretation is currently being litigated in the courts of Arizona.
The bankruptcy court recognized this by finding that James “potentially” had equity. It then made a finding that “lifting the stay at this time could serve only to frustrate the implementation of a plan, and for this reason we deem the note to be necessary to an effective reorganization.”
The BAP held that the note was not necessary to an effective reorganization:
The note is a passive investment instrument. It does not serve as an essential cog in the business operation of the debt- or ... Cases cited by James Bialac only highlight the fact that the only important issue at hand is whether there is equity in the note to be salvaged by a plan. He has suggested no other purpose the note can serve.
The BAP maintained that the bankruptcy court must find there is equity in the property to maintain the stay. A finding of “potential equity” was deemed insufficient.
The burden of proof on the question of a debtor’s lack of equity in property lies with the creditor. 11 U.S.C. § 362(gXl). In re San Clemente Estates, 5 B.R. 605, 610 (Bkrtcy.S.D.Cal.1980); Matter of Vincent, 7 B.R. 866 (Bkrtcy.M.D.Fla.1980). HIC has at best shown that, under one interpretation of the note, James Bialac has no present equity in it. It is equally plausible that he does. The question is currently being litigated. The bankruptcy court was justified in refusing to duplicate the efforts of another court.
HIC has failed to show that James has no equity in the note. We need not determine whether the note is necessary to James’ reorganization. Lifting of a section *433 362 stay requires satisfaction of a two-part test and, failing one part, there is no need to consider the other.
CONCLUSION
The decision of the Bankruptcy Appellate Panel is reversed. The decision of the bankruptcy court is affirmed in its entirety. The case is remanded to the bankruptcy court. The 60-day period within which James Bialac was to redeem the entire note will begin to run upon issuance of the mandate.

. This appeal is but the latest episode in what the BAP has called a “litigation soap opera.” For sixteen years the Bialac family and investors in HBC and HIC have been locked in a struggle to wrest ownership of valuable real estate from each other. This struggle has taken the parties twice through the Arizona state court trial system, twice through the state appellate process, twice through the federal bankruptcy courts, twice through the BAP, and six times to this court. It is an example of litigation run amuck at great expense to the public as well as the parties.

. A good source of information regarding the initial dealings between the parties are the Findings of Fact and Conclusions of Law, Maricopa County Superior Court, No. C-196753, authored by Judge (now Justice) Sandra O’Connor during her tenure in the Arizona state trial courts.

. There is ongoing litigation in state court regarding whether interest payments are due annually when there is “surplus cash,” or whether no interest is due until the maturity date of the note.

. Neither of these issues have been raised on appeal. • ( .